## STATE *vs.* HARRISON RICHARDS.

What degree of mental incapacity constitutes *dementia*, and renders a person not criminally responsible for acts otherwise criminal.

INFORMATION for burning a barn; brought to the Superior Court for Windham County and tried to the jury, at its August term, 1873, on the plea of not guilty, before *Seymour, J.*

The defence was that the prisoner had not sufficient mental capacity to be criminally responsible for the act. The

charge of the judge, which sufficiently states the facts of the case, was as follows:

### JUDGE SEYMOUR'S CHARGE.

The evidence seems ample to warrant you in finding that the burning complained of was caused by the prisoner. Your attention has been turned mainly to the question whether the act was done with the felonious intent charged, and this question depends mainly upon another, whether the accused has sufficient mental capacity to warrant us in imputing to him a felonious intent.

That he is considerably below par in intellect is apparent to us all. This is indicated by his countenance and general appearance.

The same thing is indicated by his extraordinary conduct at the fire. As the flames were bursting out he was seen on all fours crawling back from under the burning barn, with no clothing upon him except his shirt and trowsers. The day was excessively cold. He remained some half hour, thus scantily clothed, gazing stupidly at the blaze, until ordered into the house. All this took place in broad day-light, in plain view of Mr. Gallup's house.

But it is undoubtedly true, as the attorney for the state contends, that mere inferiority of intellect is no answer to the prosecution. We are, therefore, called upon in this case to decide an interesting and difficult question, to wit, whether the accused has sufficient mind to be held responsible as a criminal.

He is not a mere idiot, nor does he appear to be a lunatic. He suffers from want of mind rather than from derangement or delusion, and the question is whether the want of mind is such as to entitle him to acquittal on the ground of what in law is termed *dementia*.

This enquiry is attended with inherent difficulties. Our knowledge of our own minds is imperfect; our knowledge of the precise mental condition of another is necessarily still more imperfect. We as triers are obliged to rely upon the evidence furnished us by witnesses whose means of knowledge

are limited and who find great difficulty in communicating to us, on a subject of this nature, what they do know.

Our principal embarrassment arises however from the want of a definite measure of mental capacity. Eminent judges. and learned commentators have attempted to furnish rules and tests for the guidance of triers in cases of this kind, but upon examination these rules and tests turn out to be imperfect and unsatisfactory.

It was formerly thought that the jury might properly convict if the accused had any sense of right and wrong, or if he was aware that punishment would follow the commission of an offence.

But children of very tender years have some sense of right and wrong, and fully understand that punishment will follow transgression. Such children are subjected by their parents to discipline, and are by gentle punishments restrained from wrong doing; but our sense of humanity would be greatly shocked at the thought of subjecting children to the penalties of statute law because some sense of right and wrong and fear of punishment had been developed in them.

So again it is often said in the books that a person is to be deemed responsible for crime if he understands the consequences and effects of the act laid to his charge. This is undoubtedly and obviously true if he has such understanding and appreciation of consequences as pertain to other men. But if he has less of it than is common to men in general, how much less must it be to escape responsibility?

I think the accused had some knowledge of the consequences of his acts. He probably knew that by igniting a match and throwing it into a hay-mow a fire would be kindled and that the barn would thereby be consumed. He perhaps also had some appreciation of the loss and destruction of property which would ensue.

But I am not willing to say that some knowledge of consequences, however faint and imperfect, is sufficient to warrant you in convicting the prisoner. I can give you no precise rule, but I think it clear that if the prisoner's perception of

consequences and effects was only such as is common to children of tender years he ought to be acquitted.

And this leads me to refer to the rule adopted by an eminent English judge, Lord HALE. He reasoned that, inasmuch as children under fourteen years of age are primâ facie incapable of crime, imbeciles ought not to be held responsible criminally unless of capacity equal to that of ordinary children of that age.

If this test be adopted the prisoner will upon the testimony be entitled to an acquittal. The principal witnesses for the prosecution say that he is inferior in intellect to children of ten years of age, and several very intelligent witnesses for the defence testify that they are acquainted with many children of six years who are his superiors in mental capacity.

I am inclined to recommend Lord HALE's rule to your adoption, not however without qualifications which I think it important to observe.

And first, this test, like all others which I know of, is imperfect.

Probably no two of us have the same idea of the capacity of children of fourteen years of age, and then there is this further difficulty, that there can be no accurate comparison in detail between the healthy and properly balanced, though immature, mind of a child, and the unhealthy, abnormal and shrivelled intellect of an imbecile. The comparison therefore is only of the general result in their respective appreciation of right and wrong and of consequences and effects.

This further consideration ought also to be borne in mind, that though in modern times persons under fourteen are seldom subjected to the penalties of the criminal code, yet in law children between seven and fourteen may be subjects of punishment if they are shown to be of sufficient capacity to commit crimes. In applying Lord HALE's rule therefore, the child to be taken as the standard, ought not to be one who has had superior advantages of education, but should rather be one in humble life, with only ordinary training.

And after all, gentlemen, you see that I can furnish you with no definite measure of mental capacity to apply to the

prisoner. The whole matter must be submitted to your sound judgment. You will say whether the prisoner has such knowledge of right and wrong, and such appreciation of the consequence and effects of his acts, as to be a proper subject of punishment. Opinions on this subject have been expressed by most of the witnesses who have testified. These opinions depend for their value mainly upon the facts with which they are connected. You have the advantage of being able to compare with each other all the facts which have been brought to your notice bearing upon the prisoner's mental condition. You will look carefully at all these facts. The history of the prisoner's life is somewhat significant. From early childhood it has been spent in alms-houses, subjected to constant constraint. In the most ordinary acts of his life he has been governed by the superior will of others to whose care he has been committed. He has, it appears, been seldom left to the free guidance of his own judgment. When so left, he seems to have acted without forecast, under the pressure of immediate wants and impulses.

If you acquit the prisoner on the ground of want of mental capacity you will so say in your verdict, in order that the prisoner may in that event have the benefit under our statute of a home where he will be kindly cared for, but kept under such restraints as to prevent his doing injury to the persons or property of others.

The jury acquitted the prisoner, stating in their verdict that the acquittal was on the ground of want of mental capacity.

*Penrose*, State Attorney, and *Richmond*, for the State.

*Hall*, for the prisoner.