LEDER *v*. NATIONAL UNION FIRE INSURANCE CO.

1. APPEAL AND ERROR—SAVING QUESTIONS FOR REVIEW—EVIDENCE.
   A mere statement of the trial court that he did not consider a witness competent as an expert on value, not passing on any particular question or ruling out testimony offered, was not error of a reversible character, since it did not affect any right of defendant.

2. SAME—EXCEPTIONS.
   Assignments of error not based on any exception or relating to motions to strike out testimony, the grounds or reasons for which were not mentioned on the trial, present no reviewable questions.

3. EVIDENCE—INSURANCE—LOSS—VALUE.
   In an action on an insurance policy the value of personal property destroyed and covered by the policy may be shown, if no market exists, by the evidence of the pertinent facts usually taken into consideration by buyer or seller, such as original cost (if it was bought in good faith), cost of duplication, age, use to which it has been put, and the condition of the property at the time in ques-

tion: opinions of witnesses based on facts disclosed are competent.

4. Insurance—Trial—Defenses.

Where defendant set up in defense of a suit on a policy of insurance, intentional and wilful overvaluation of the property on the part of plaintiff and asked the court to instruct the jury that intentional and wilful misrepresentation would avoid the contract, no ground was presented for the claim that the court should have charged that an innocent overvaluation would avoid the policy, and having made no such request to charge, the defendant could not review the point on error.

Error to Bay; Collins, J.  Submitted April 17, 1913. (Docket No. 82.)  Decided May 28, 1913.

Assumpsit by John Leder against the National Union Fire Insurance Company upon a policy of insurance.  Judgment for plaintiff.  Defendant brings error.  Affirmed.

*Asher L. Cornelius,* for appellant.

*E. E. Anneke* and *W. B. Henry,* for appellee.

Ostrander, J.  In an action upon a policy of fire insurance (Michigan standard), which insured a gasoline launch and a boathouse, defendant gave notice with its plea that it would show in its defense:  (1) That the insurance was procured by reason of false and fraudulent representations of plaintiff as to the value of the property, he knowing the representations to be false, and intending, in making them, to deceive defendant; (2) that in submitting proofs of loss plaintiff stated under oath that the launch was worth $600 at the time of the fire, when in fact it was worth less than $200; (3) that plaintiff set the fire which destroyed the property with the purpose of defrauding the defendant.  The matter of special defense last stated was abandoned.  The value of the property at

the time of the fire (it was a total loss) was in dispute, and upon this issue, and those suggested by the notice of special defenses, testimony was presented to the court and a jury.

In answer to special questions, the jury found that, when he applied for the insurance, the plaintiff represented to the defendant's agent that the launch was worth $600 and the boathouse $200, and that the said agent issued and delivered the policy of insurance sued upon, relying upon plaintiff's said statements. By the policy, indemnity was secured against loss by fire upon the boat for an amount not exceeding $550, and on the boathouse $100, not exceeding, either, the actual cash value of the property destroyed. The jury found the cash value of the insured property to be $450, and there was a verdict and judgment in favor of plaintiff for that sum. A motion for a new trial, one ground of which was that the verdict was against the weight of the evidence, was overruled.

The policy of insurance was issued September 29, 1910, and the fire occurred January 4, 1911. The boat was purchased by plaintiff from an owner who had himself bought it four or five years before the trial, not from the manufacturers, but from persons who then owned it. The hull was old-fashioned, of a type formerly, but not in late years, approved. Plaintiff paid $200 for the boat and its equipment and the boathouse, and agreed with the vendor that he might for three years occasionally, and as he wished to do so, have the use of the boat. Plaintiff spent little on the boat and had considerable difficulty with it before laying it up for the winter. To prove its value, the plaintiff introduced testimony tending to prove the size of the boat, the kind of engine and other equipment; that it was in good condition in September, 1910; that he was offered $600 for it; what it would cost to build the hull; what the engine was worth in September, 1910—all this without objection and by the testimony

of the first witness called for the plaintiff. The wife of plaintiff's vendor, who said she was really the one who made the sale, testified over objection:

"We just asked Mr. Leder $500 for the boat and boathouse. We finally sold it for $200 and the use of it for three years whenever we wanted it. The sale would not have gone through had it not been for that provision. When we sold the boat to Mr. Leder it was in A 1 condition."

Defendant moved to strike out that part of the answer which related to the condition of the boat. The motion was overruled. The witness was asked, "After you returned in the summer, was your husband then sick?" and replied: "That I can't remember. He is always supposed to be sick from the 21st of August, until frost time, and very seldom able to run a boat." Defendant moved to strike out, assigning no reason.

A witness for defendant being interrogated, the following occurred:

"Are you familiar with the value of boathouses along the river there at that point?
"*A.* Well, I have built some buildings myself; I never built a boathouse.
"*Q.* Do you know what boathouses have sold for along there; what people have paid in buying them?
"*A.* Yes.
"*Mr. Anneke:* I object to that unless there is some similarity of size or kind.
"*Mr. Cornelius:* Well, the ordinary size of boathouse.
"*The Court:* This witness is not a carpenter and he had not handled these things himself personally. I do not think he is competent on the question of value of a boathouse.
"*Mr. Cornelius:* Well, we will withdraw that. I will ask you this question and have the court overrule it and take an exception.
"*The Court:* You have a ruling and you may have an exception.

"*Mr. Cornelius:* Give me an exception to the ruling of the court."

Of the first exception it is said in argument that the witness could not state what she asked for the boat; that "what the final bargain resulted in is the important part." No reason was given for the objections upon which the second and third exceptions are based. As to the last exception referred to, no right of defendant was affected. The witness had answered the last interrogatory put to him. No question was pending. The objection which was made for plaintiff did not call for or suggest the ruling. The court may have anticipated counsel, but reversible error must be made out, not merely suspected or assumed.

Assignment of error No. 11 is not based upon an exception.

Assignment No. 2 is based upon the following:

"*Q.* What would it be worth to place an engine like that in the hull?

"*Mr. Cornelius:* To that I object, to that line of questioning; the sole question is the value of the property at the time the fire occurred.

"*The Court:* That is true, but the elements that go to make up the value can be proved separately. (To which ruling defendant's counsel duly excepted.)"

It does not appear that second-hand boats of the size, style, and equipment of the particular boat had a market value in the community, and does appear that second-hand gasoline boats were sold, perhaps frequently, there. In such cases the value of particular personal property at the particular time being in dispute, and being a fact to be found by the jury, such pertinent facts as are usually inquired about and taken into consideration by the ordinary buyer and seller of similar property may be shown. They are not conclusive, but are intended to aid the jury. The original cost, if purchased in good faith, the present cost of duplication, the age and the use to which it has been

put, the condition of the property at the time at which the value is to be fixed, may be inquired about. Opinions of witnesses, based upon the facts disclosed, may be taken. The rule of evidence is well established and, so far as the rulings of the trial court have been properly questioned, does not appear to have been violated.

We are not satisfied that the verdict is so clearly against the weight of the evidence that this court can interfere to set it aside.

The remaining questions arise upon the facts found by the jury and upon the charge of the court. They must be considered with the instructions asked for by defendant and the notice of special defenses. The instructions asked for were the following:

"(1) Lines 7 and 8 of the policy upon which this suit is based provide as follows:

" 'That this entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject-matter thereof.'

"If you should find from the evidence that the insured in applying for said insurance concealed or misrepresented any material fact or circumstance concerning the insurance or the subject-matter thereof, and that by reason and because of such concealment or misrepresentations defendant issued said policy of insurance, then in that case even I instruct you that plaintiff could not recover on such policy, and your verdict must be, 'No cause of action.'

"(2) Gentlemen of the jury, one of the issues in this cause is whether or not John Leder, the plaintiff herein, at the time he applied for the policy of insurance upon which this action is based, represented to Albert Buchanan, defendant's agent, that the launch Summer Girl was worth $600 and that the boathouse insured by such policy was worth $200. If you should believe from all the evidence that such representations were made by the said Leder to the said Buchanan, and that they were made falsely for the purpose of deceiving the said Buchanan, and that the said Leder, at the time they were made, knew they were false,

and if you should further find the fact to be that said launch was not worth $600, or substantially that sum, and that said boathouse was not worth $200, or substantially that sum, then in that event I instruct you that the plaintiff, in procuring said policy, would be guilty of such fraud as would avoid the policy of insurance, and your verdict must be, 'No cause of action.'"

The requested instructions were given, and in deciding the motion for a new trial the court said, among other things:

"The verdict of the jury assessed the loss at $450 by its verdict saying, in substance, that that was the value of the property at the time of the fire. Upon this point the defendant makes certain contentions by reasons 4, 5, 6, and 7, which will now receive attention; the intention being clearly to cover the points involved. The defendant now contends, among other things, that this made a substantial overvaluation of the property, and that such overvaluation of the property avoided the policy, regardless of the motives of the insured. Whether this statement, which is seriously contended for, is the law, the defendant, by propounding the request above given and having that request given by the court, made a different rule of law in this case. The defendant, by tendering and by the giving of that request, authorized the jury to find that, even if there was a substantial overvaluation, they were authorized to find for the plaintiff unless the representations made by Leder to Buchanan were made falsely for the purpose of deceiving Buchanan, and that at the time Leder made the same he knew they were false.

"It may be conceded for the purposes in hand that there was a substantial overvaluation, in fact; that the statements as to overvaluation were, in fact, made by plaintiff to Buchanan, and that the statements were false in fact, and that the jury reached this conclusion; but their general verdict shows that they also concluded that the said representations made by plaintiff to Buchanan were not made falsely for the purpose of deceiving Buchanan, and that Leder did not know that they were false when made. It follows

from this situation that the general verdict of the jury is not opposed to the answers to the special questions and it appears to me that the general verdict and the answers to the special questions did not require or logically lead up to a verdict of no cause of action. As it now appears, interrogatories 3 and 5, submitted to the jury, were immaterial unless there had been coupled with them a further interrogatory calling for the conclusions of the jury upon the other point above indicated, involved in the quoted request of the defendant given on his behalf. Defendant's request above quoted, as given, presents the theory advanced in the notice of defense attached to the defendant's plea. The notice attached to defendant's plea does not set out as a defense an overvaluation at the time of the insurance, not a fraudulent overvaluation, and the theory advanced in the argument on this motion, to the effect that an unintentional material overvaluation would defeat the policy, is not stated in defendant's plea and was not brought up on the trial of the cause."

It is said in defendant's reply brief:

"There is a radical difference between the instruction upon which said error is assigned and the one requested by appellant. The instruction requested by appellant, reduced to its simplest form, states that a misrepresentation as to the value of the property which was made wilfully, for the purpose of deceiving the defendant, would avoid the policy. This instruction does not state that all of these facts must be present in order that the policy shall be avoided. It only goes to the length of stating that if those elements are found in connection with the misrepresentation, the policy will be thereby avoided. On the other hand, the instruction given by the court stated that not only would such misrepresentation as was described in appellant's said instruction avoid the policy, but that all of such elements were essential in order to work a forfeiture of the policy. The fact that the defendant stated in said instruction that intentional and wilful misrepresentation would avoid the policy is by no means equivalent to saying, as the court stated in the instruction complained of, that no

other misrepresentation, except that made wilfully and fraudulently, would avoid the policy. This instruction requested by appellant presents appellant's view of the law of the case in event the jury should find that the representations were made wilfully and intentionally with intent to deceive. Defendant's instruction No. 1, requested by defendant and given by the court, was intended to cover all other misrepresentations, including constructive fraud. It will therefore be seen that instructions were requested by the defendant on both the intentional and the nonintentional theories as to plaintiff's representations, and defendant is certainly not estopped to urge at this time that an unintentional misrepresentation will avoid the policy."

This argument loses sight of the requirements of Circuit Court Rule 7, subd. "d" of the special defenses pleaded, and of the reasoning of the trial court used in denying the motion for a new trial. If an instruction was desired to the effect that an overvaluation of the property, innocently made, would avoid the policy, such a request should have been framed and presented. Considered together and with reference to the order in which they were presented, the requests preferred and given seem to negative the idea that counsel for defendant relied upon the rule of law now contended for. Usually counsel are satisfied when the trial court charges the jury as requested and in the language of the requests preferred.

We do not find reversible error, and therefore affirm the judgment.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, KUHN, STONE, and BIRD, JJ., concurred.