## The State of Connecticut *vs.* Louis Saxon.

First Judicial District, Hartford, March Term, 1913.

Prentice, C. J., Thayer, Roraback, Wheeler and Beach, Js.

Whether evidence is so remote in point of time as to be irrelevant is a matter within the discretion of the trial court.

A conversation showing a motive to kill on the part of the accused, occurring sixteen days prior to the homicide, can hardly be said to be so remote as to have no weight and therefore to be irrelevant.

Evidence that one accused of murder in the first degree in killing his wife, had been telling people she was a bad woman, in consequence of which she had lost her lodgings, tends to show animosity on his part and is relevant upon the question of motive.

The accused requested the trial court to instruct the jury that if they found upon the whole evidence that he did not possess the mental capacity to commit the crime charged, "your verdict should be acquittal." This instruction was given with the exception of the words quoted, in lieu of which the court said: "then there could be no crime." *Held* that this was a substantial and sufficient compliance with the request.

Having complied with another request of the accused which related to murder in the second degree, the trial court explained its meaning, and said that if these conditions, just stated, were the conditions attending the killing, there could be no conviction for any higher degree of crime than murder in the second degree. *Held* that this explanation was not open to the criticism that it induced the jury to believe that they could not find the accused guilty of murder in the second degree except under the circumstances detailed in the explanation, and that it practically withdrew from their consideration the effect upon the prisoner of his drinking, his nervousness, and his brooding over family troubles; but that, on the contrary, the requested instruction without the explanation, might have confused the jury, who had just been told that a killing in hot blood upon adequate provocation would be manslaughter; and therefore the explanation was in the interest of the accused and favorable to him.

It is only where the accused has ocular evidence of actual adultery, or of facts justifying a reasonable belief that it is actually being committed, that the court will be warranted in saying, as matter of law, that sudden passion aroused by such a belief reduces the homicide to manslaughter; a mere belief by the accused that his wife is about to commit the offense not being sufficient.

A requested instruction in a homicide case, that a deliberate intent to

The State *v.* Saxon.

take life is essential to murder in the first degree, is sufficiently covered by a charge that the killing must be wilful, deliberate and premeditated—accompanied by an explanation of the meaning of these terms—, and that one who commits murder while so intoxicated that his mind is incapable of forming a wilful, deliberate and premeditated purpose to kill, is not guilty of first-degree murder.

The accused requested the trial court to instruct the jury that if they should find that his mentality was very low, and not as high in some departments as a child of six years, they should acquit. *Held* that this request was properly refused as not stating the proper measure of criminal responsibility.

The weight to be given to the opinion evidence of experts, like that of other witnesses, is for the jury; but unless the facts assumed as the basis of such testimony are true, the evidence is of little weight, and the jury may very properly be so instructed.

Where the existence of the facts assumed in a hypothetical question depends chiefly upon the degree of credibility to be given to the testimony of the accused himself, the jury are bound to consider the probability of his story and his vital interest in the result.

An instruction which does not tell the jury how they are to find the facts is not erroneous merely because it may indicate an opinion of the trial court adverse to the accused.

Argued March 8th—decided April 18th, 1913.

INDICTMENT for murder in the first degree, brought to the Superior Court in Hartford County and tried to the jury before *Bennett, J.;* verdict and judgment of guilty, and appeal by the accused. *No error.*

*Joseph L. Barbour* and *Denis T. O'Brien, Jr.*, with whom was *William E. Egan*, for the appellant (the accused).

*Hugh M. Alcorn*, State's Attorney, for the appellee (the State).

THAYER, J. The indictment charged the accused with murder in the first degree by wilfully, deliberately, and premeditatedly, and with malice aforethought, shooting and killing Annie Spelansky. The

accused and the woman whom he killed had lived in this country several years. They had lived as man and wife and had four children. Less than two months before the woman was killed, they had separated under an agreement that they would thereafter live apart, and that the accused would support the children. The defendant, on the 27th day of November, 1912, entered the fruit store where the woman was at work, and shot and killed her. These facts seem not to have been disputed. The defense, as stated in the brief filed on behalf of the defendant in this court, "was based upon insanity, no claim being made that the act had not been committed by the defendant, but it being claimed that he had not sufficient mental capacity to be capable of forming the intent to commit murder," and, further, "that he believed that his wife, Annie Spelansky, was committing adultery in the rear room of the building wherein she was shot, and that he shot and killed her while laboring under the passion aroused by the belief that she was so committing adultery."

All the assignments of error, except two which relate to the admission of evidence, relate to the charge, and to the court's refusal to charge as requested by the accused. Only one of the exceptions relating to the reception of evidence has been pursued in the brief or argument for the accused. This relates to the testimony of a police officer who was called by the State to testify to a conversation which took place at an interview between the accused and the Spelansky woman, in the presence of the witness, on the 11th day of November, sixteen days before the woman was shot. The State claimed that the accused was jealous of the woman, and that he was trying to force her to leave town, and that this was the motive of the crime. The evidence was offered as tending to establish this motive, and to the question, "Now, you tell the circumstances of what

took place in the presence of the accused, what was
said," the accused objected upon the ground that it
was irrelevant. The objection was overruled and the
accused excepted. The answer contained some matter
not responsive to the question; but this was not ob-
jected to except in one instance when the witness was
corrected by the court. It is claimed that as this con-
versation occurred sixteen days before the crime it was
too remote from it, and had no bearing upon the crime;
that no foundation was laid for such evidence by show-
ing that the conversation had relation to or bearing
upon the crime; and that there is nothing in the con-
versation detailed in the answer which shows any feel-
ing by the accused against the woman. So far as the
remoteness of the time has to do with the relevancy or
irrelevancy of the conversation, it was within the discre-
tion of the court, and it can hardly be said that because
a conversation showing a motive on the part of the
accused to kill the woman (if it did show such a motive)
occurred sixteen days prior to the act of killing it was
so remote as to have no weight, and to be therefore ir-
relevant. No objection appears to have been made
upon the ground that a proper foundation for the ques-
tion had not been laid. It appears that the attorney
for the State claimed it upon the ground that the an-
swer would tend to show the existence of the motive
for the crime which was claimed by the State. This,
in the absence of an objection upon the specific ground
that a foundation should be laid by evidence, was suffi-
cient to warrant the court's action in admitting it.
Indeed, it was the only foundation which could be fur-
nished for the court to act upon, for the witness would
not be allowed to state that the conversation showed a
motive for the crime. The statement of counsel is the
foundation upon which such testimony is ordinarily
admitted, and if after it is heard the court is of opin-

ion that the evidence does not fulfil the attorney's promise, it will be stricken out on motion. If the last reason stated in the brief of the defendant, namely, that there is nothing in the conversation detailed in the answer which shows any feeling by the accused against the woman, is well founded, it furnished a good ground for a motion to have the answer stricken out. But no such motion appears to have been made.

But this last claim is not well founded. The witness testified that the woman, in his presence, charged the accused with having been around telling people that she was a bad woman, that he went to places where she had been stopping, and from what he told there she had lost her lodgings, and the accused did not deny this, but said that she was a bad woman, that he had heard so, but did not know anybody she was ever with. This certainly tends to show animosity toward the woman by the accused, and that he was pursuing her and causing her trouble at her lodgings, after they had agreed to a separation, with no apparent purpose except that of compelling her to leave the town. Animosity toward her shortly prior to the act of killing would be a proper fact to be established on the question of motive. If there was a motive sixteen days before the crime, it would be a relevant fact. The objection to the question was properly overruled, and had there been a motion to strike out the answer as an entirety, after it had been received, that also would have been properly overruled.

The remaining assignment of error for the improper admission of evidence relates to a question asked by the State's attorney upon cross-examination of one of the defendant's expert witnesses. As this assignment has not been referred to in the brief for the defendant or in argument of his counsel, it is enough to say that the question which was objected to was clearly admissible

upon cross-examination, and was therefore properly admitted.

In considering the objections to the charge and to the refusals to charge, the claims of the respective parties as to what facts had been proven must, of course, be kept in mind. The accused claimed, in substance, that the Spelansky woman was his wife by a ceremony performed in Russia before they came to this country; that after their separation he heard bad reports of her, saw her with other men, brooded over the disgrace, and took to drink; that on the Sunday prior to the shooting he went to see his children, and became very despondent because they desired to return home, and he had no home to give them; that on the following day he went to Hartford from New Britain, where he was living, and there purchased a revolver (giving his correct name but a fictitious address) for the purpose of killing himself; that he returned home, and continued his work until six o'clock, when he again drank heavily, and became intoxicated; that on the following day, Tuesday, he worked all day, and at night again drank heavily; that on Wednesday, the day of the shooting, he was very nervous and excited, was inattentive to his work, and again began to drink heavily, and in the evening after finishing his work he had several drinks, and then went to the rear of the store in which his wife was employed, and there heard her talking with a man about improper subjects, and believed that she was about to commit adultery with an unknown man; that, laboring under that excitement, he went to the front entrance of the store, entered it, and, without warning, shot her, and that he was not in his right mind, but was insane at the time.

The State claimed that the evidence showed that the woman was not in the rear of the store at the time the accused claimed to have heard her in conversation

there with the unknown man; that, after the time when he claimed to have heard such conversation, he went to a saloon near-by, and had liquor, asking for some good whiskey, saying that he wished to pick up a good nerve as he had a good big job that night; that he then borrowed a pencil and wrote a letter to his brother, saying therein, among other things, "forgive me for the crime I commit"; that he then went out directly to the store where the woman was employed, entered, and shot her as she stood at the counter in the front store in the presence of the proprietor and several customers; and that the accused wilfully, deliberately, and premeditatedly planned and excuted the killing of the woman.

Exception is taken in the assignment of errors to the court's refusal to charge the defendant's first request. The court charged in full conformity with this request, there being one or two unimportant verbal changes. This assignment has not been pursued on the argument. Both the request and the charge conformed to the language of the charge in *State* v. *Johnson*, 40 Conn. 136, 139, 142, which was approved by this court as unexceptionable. The request had relation to the degree of mental capacity of which a person must be possessed to render him a moral agent and subject to punishment for criminal acts committed by him.

The second request called for an application of this rule to the present case, and was in these words: "If you find upon the whole evidence that the prisoner at the time of the commission of the original act did not have mind and capacity, reason and understanding, enough to enable him to judge of the nature, character, and consequences of the act charged against him, that the act was wrong and criminal, and that the commission of it would properly and justly expose him to penalties, or that the prisoner was overcome by an irresistible impulse arising from disease, your verdict

should be acquittal." The court gave this instruction, but substituted for the words "your verdict should be acquittal," the words "then there could be no crime." This was a substantial compliance with the defendant's request. In *State* v. *Johnson*, 40 Conn. 136, 139, the court used the words, "or the jury should acquit," and, citing that case, the accused insists that "the jury should have been told in so many words that their verdict should be acquittal if the accused lacked the mind and capacity, reason and understanding specified in the charge." In the case referred to, the necessity of the particular words in question here were not passed upon by the approval of the charge. They would doubtless have been proper in the present case. But manifestly any other language which makes it clear to the jury that if the accused is not, at the time of the crime, possessed of the mental capacity described he is not a subject for punishment, and cannot properly be convicted, is all that can be required. The language employed by the court in the present case fulfilled this requirement, and was a sufficient compliance with the request.

The defendant's third request was this: "If you find upon the whole evidence that the prisoner could distinguish between right and wrong; . . . and you find further that the prisoner was laboring under an unusual and unnatural excitement, brought upon him by the circumstances in which he was placed and the atmosphere which surrounded him; and that by reason thereof his mind was in such a state of passion that he was unable to do murder in the first degree, you must then bring in a verdict of murder in the second degree." It is conceded in the defendant's brief that the court so charged the jury, and the record shows that the court read the request, and told the jury that it so charged. The defendant, therefore, cannot and does not complain of this statement of the law, and we are not called upon

to pass upon its correctness. The defendant, under his assignment that the court refused to give this request, says that he was deprived of the benefit of it by the court's subsequent explanation of the meaning of it. The real complaint of the defendant under this assignment is not that the court did not charge as thus requested, but that it afterward improperly charged. An objection has been made in the sixth assignment of error to the same part of the charge, herein called an explanation; but, as that assignment has not been pursued in the brief, we will here say all that need be said concerning both assignments.

The explanation referred to was this: Having complied with the third request, the court at once said to the jury: "The claim here is . . . that Saxon killed in a transport of passion, temper, or excitement, anger or rage suddenly aroused, and that the deed was impelled before the reason and will power could assert themselves or consideration and reflection were brought to bear upon the matter. If that be true, if those be the circumstances, then there can be no conviction of murder in the first degree; but the conviction, if there is a conviction at all, can be for no crime higher than murder in the second degree." It is claimed that this language must have led the jury to believe that they could not find the accused guilty of murder in the second degree except under the circumstances stated by the court as being the claim of the defendant in the request, and that it in effect withdrew from their consideration the effect upon the accused of his drinking, nervousness, and brooding over family troubles, which had then culminated in the shooting. We think that this interpretation of the language used by the court is not warranted by the language itself, and especially when considered in connection with the circumstances under which it was used. The court had previously

adequately instructed the jury as to what must be proved to warrant a verdict of murder in the second degree. The language of the request, except the direction to the jury as to the verdict which should be rendered, was apparently taken from the opinion of the court in *Andersen* v. *State*, 43 Conn. 514, 527. It was there used in arguing that, under such circumstances, an accused would not be guilty of murder in the first degree. This is a very different thing from saying that under such circumstances he would be guilty of murder in the second degree. It is apparent that all these circumstances could exist and the killing be perpetrated in the heat of sudden passion aroused by sufficient provocation to reduce the crime to manslaughter. Yet the request of the accused asked the court to instruct that the verdict under the circumstances named must be for murder in the second degree. It occurs to us that the court, seeing that the request as given might, if not explained, confuse the jury, who had just been instructed that a killing in hot blood upon adequate provocation would be only manslaughter, made the explanation complained of, which was in the interest of the accused. It is apparent that this was the purpose, for almost immediately after the language quoted, and as a part of the same explanation, the court tells the jury that if the provocation claimed by the accused existed, but was not sufficient in the eye of the law to reduce the crime to manslaughter, yet was sufficient to and did excite such anger or rage in the mind of the accused, the crime was murder in the second degree and not murder in the first degree. This was very favorable to the accused. It made clear to the jury that, if the "circumstances in which the accused was placed and the atmosphere surrounding him" was such when he shot the woman as to constitute adequate provocation, their verdict might be manslaughter, but if not ade-

quate for this, but sufficient to prevent deliberation and premeditation, the verdict might be murder in the second degree. The accused was benefited rather than injured by the explanation.

The court properly refused to charge as requested in the defendant's fourth request, which reads: "If you find upon the whole evidence that the crime was the sudden result of an uncontrollable passion naturally excited by the reasonable belief that the deceased was committing adultery, formed under the circumstances testified to by the accused, your verdict should be guilty of manslaughter." The law presumes that when a husband finds his wife in the act of adultery and at once, in the first transport of passion, kills one or both of the guilty parties, the element of malice is absent from the crime, and extenuates it to manslaughter. But it is only where there is ocular evidence of actual adultery, or of facts justifying a reasonable belief that it is actually being committed, that the court will be justified in saying, as matter of law, that sudden passion aroused by such a belief reduces the homicide to manslaughter. *State* v. *Yanz*, 74 Conn. 177, 181, 50 Atl. 37. There was no claim or evidence in the present case to warrant the giving of the instruction asked for. The accused saw no adultery or acts warranting a belief that it was being committed. His belief was as stated in the finding, that his wife was about to commit the offense, not that she was committing it.

The defendant interprets his fifth request as calling for an instruction that "a deliberate intent to take life is an essential to murder in the first degree." If this is the construction to be placed upon it, the charge shows that it was complied with; for the jury were told that in this case it is charged that the killing was wilful, deliberate, and premeditated, and it is not charged or claimed that any of the other facts which, under the

statute, make a killing first-degree murder, existed; and they were told that, to establish the crime charged, "the killing must be, to repeat the language of the statute, 'wilful, deliberate and premeditated'" and the meaning of these terms was explained. The jury were also instructed that "one who commits murder when he is in such a condition of intoxication that his mind and will are incapable of forming a wilful, deliberate, premeditated purpose of taking life, is not guilty of murder in the first degree," and that the same is true when "a condition of incapacity to will, to deliberate and to premeditate" arises from any other cause. This would apply to the condition stated in the request, where the inability to form a deliberate purpose to take life on the part of the accused is assumed to arise from the influence upon his mind of his belief as to the infidelity of his wife. The request was substantially complied with in this and other portions of the charge.

The sixth request, which was properly refused, was as follows: "If you find that the mentality of the accused was very low, and not as high in some departments as a child six years old, then your verdict should be acquittal." This was not a proper rule for measuring the responsibility of the accused for his act. It does not point out the departments in which, if the defendant's mentality is inferior to that of a six year old child, he is relieved from criminal responsibility. Some children are of higher mentality and intelligence than others. The moral traits of children differ the same as those of older persons do. Children's powers of thought, perception, attention, volition, and memory differ. A child, even if the average one be taken, furnishes, at best, a poor criterion by which to test the mentality of a person of full age. If it is a proper one in any case, it is in one like that of State v. Richards, 39

The State *v*. Saxon.

Conn. 591, where the claim was that the accused was demented; and, as the jury were told in that case, the comparison should be limited to "their respective appreciation of right and wrong and of consequences and effects."

The objections raised to the portions of the charge which are quoted in the seventh, eighth, ninth, and tenth assignments of errors, are so similar and so connected that they may be considered together. Experts, who had been called in behalf of the defendant to prove that he was insane, testified as to their opinion based upon a physical and mental examination of him and also in answer to a hypothetical question. One of the facts upon which the opinions were based was the statement of the accused as to the conversation heard by him between his wife and an unknown man in the rear room of the store where she worked. This story was told the experts when they examined him, and was embodied in the hypothetical question, and, as already stated, was told by him upon the witness-stand during the trial. The State claimed to have proven that no such conversation occurred, and claimed that the story was a fabrication. The defendant's counsel claimed that it in fact occurred, and constituted a sufficient provocation to extenuate the crime, requesting the court, as already stated, to so charge. They also claimed that if it did not occur, the accused actually believed that he heard the voices, and this showed hallucination, and was proof of insanity. If the experts based their opinions to any extent upon the fact that the accused heard or thought that he heard these voices, the question became important, in weighing their testimony, whether his story that he had heard them or believed that he heard them was a fact or a fabrication. If he in fact heard the voices, one of the questions for the experts would be whether his subse-

quent conduct was the conduct of a sane or of an insane man. If he did not hear them, but really believed that he heard them, the question would be whether this indicated hallucination, insanity, and irresponsibility for his subsequent act. The weight which is to be given to the opinion evidence of expert witnesses, as is the case with other witnesses, is for the jury. Unless the facts assumed as the basis of such testimony are true, the evidence is of little weight. It is proper for the court to so instruct the jury when there is conflicting evidence as to the assumed facts. *Anderson* v. *Husted,* 79 Conn. 535, 539, 66 Atl. 7. It is apparent that if the story that the accused heard or believed that he heard these voices was a fabrication, invented for the purpose of excusing his conduct, or for the purpose of his defense, the opinions of the experts, so far as based upon the truthfulness of the story, would be of no value. The accused had as a witness told his story to the jury, so that they were in a position to pass upon his candor as a witness and the truthfulness of the story. The case was one calling for instruction to the jury as to the manner in which expert testimony is to be weighed, and as this involved the question of the truthfulness of the defendant's statement to the experts, and his story as given upon the witness-stand, it was proper for the court to call their attention to the matters proper to be considered by them in determining the truth or falsity of the statement and testimony. The court told the jury, in substance, that they were to consider, not only how far the facts assumed to exist by the expert, or in the hypothetical question, were essential to the formation of the expert opinion given, but also how far all the facts material to that opinion had been proven, and whether other and further facts material to the formation of an opinion of any value in relation to the accused, and which were not assumed to exist by the

expert, had been shown to exist in the case. To illustrate what had thus been said, the court (omitting repetition and non-essentials) continued: "In this hypothetical question—in order that I may illustrate what I mean—the opinion was given that the accused was not of sound mind. Now, . . . as a part of the facts on which the opinion was based, there is this fact assumed: that the accused, on one or more occasions, went to the rear of the store where his wife was employed, . . . that he heard voices, heard a man talking about—heard her say in reply thereto, 'you like that'; that thereupon he rushed around. Now, if this is not a fact, you are to consider the fact of its being assumed as a fact in the hypothetical question; you should consider that . . . in giving weight to the opinion founded upon the assumption. . . . I understand one of the counsel for the defense to say that he cannot claim that those voices were spoken; but he does claim that they were heard by the accused on that night. . . . If that is true, you would consider it as tending to prove hallucination. But you have got to find that he did imagine that he heard those voices. And the question . . . is here: Was he simply telling an untruth when he said he heard those things, . . . or did he imagine he heard those voices? Now that part of the question, that he heard those voices, that he imagined that he heard those voices, lies with him alone; and it is to be viewed by you as you consider his testimony, and to be given such weight as you think it possesses." The court then called the jury's attention to the fact that the statement was that of a man accused of the crime of murder, to the conflicting uses to which the statement was being put,—as an excuse to extenuate the crime if he heard the voices, as proof of hallucination if he did not hear them but imagined that he did,—and told the jury that they were to consider whether the story might not be en-

tirely false as well as in the other two aspects of it. The defendant in his brief, speaking of the first part of this instruction, says that the jury must have understood from it that, if they did not believe that the accused heard the voices and conversation to which he testified, that fact should detract from the weight to be given to the experts based upon the hypothetical question, while the hypothetical question assumed only that the accused believed that he heard those voices. The hypothetical question is not before us, but we assume that the fact is as stated in the brief. The court was, as appears from the charge, stating a case to illustrate what he had previously said. But it would have been an unfortunate illustration, if not true, had it ended where the quotation in the defendant's brief leaves it, because the court states that in the hypothetical question the fact that he heard the voices is assumed. The matter, however, was not left there. The latter part of the charge relating to the same subject deals with it upon the assumption that the accused imagined that he heard the voices, although he did not in fact hear them. Taken as a whole, the court's statement that the hypothetical question assumed that the accused heard the voices could not have misled the jury, or have harmed the accused. His counsel had made two inconsistent claims as to the defendant's story. The effect of the instruction was that upon whichever assumption the hypothetical question was based, the jury were to inquire whether the real fact supported the assumption. The jury had heard the question, and could, and were bound to, determine for themselves upon which assumption the question was based.

Referring to the defendant's statements made to the doctors who examined him as to his sanity, the court told the jury that if they found that the experts based their opinions wholly or partially upon the statements

The State *v*. Saxon.

made to them by the accused, they should inquire into the truth of those statements, and that in doing so should remember that the accused was not under oath when he made them, that he was about to be put upon trial for his life, and was vitally interested in the result of his case. They were then told that, if they found the statements to be true, they might consider the opinions of the doctors of great value, but that, if found to be untrue, the opinions of the doctors based thereon might not be of great value. The defendant complains of this, because, as he says, it is not material whether the statements made to the experts were true or untrue. The record does not disclose what the statements were to which the court had reference, nor does it much matter. The remarks were confined to statements upon which, wholly or in part, the expert opinions were based. If they were the same ones which were referred to in the hypothetical question already referred to, the same rule would, of course, apply. The charge manifestly refers to cases where the experts had assumed the facts stated to be true, and based their opinion upon them upon that asumption. It had no reference to the weight of their testimony so far as it was based upon the manner of the accused in making his statement, his hesitation, appearance, or incorrect answers to problems in mathematics. The brief asserts that some such facts appeared in the doctor's statement of the examination. The record does not show this; but, so far as the expert opinions were based upon these, they were untouched by the portion of the charge to which complaint is here made.

In the portions of the charge already referred to, and also in that which is quoted in the tenth assignment, the jury were told that in weighing the testimony of the accused the fact of his interest, his not being under oath when examined by the doctors, his appearance,

conduct, and interest in the result of the trial, should be considered by them. The defendant claims that this was improper, unfair by reason of its repetition, and that it overstepped the function of the court and misled the jury. As the accused was a witness at the trial, his testimony was to be weighed like that of any other witness. The jury were bound to consider the probability of the story which he told, his appearance, and his interest in the case. It was within the proper functions of the court to so inform the jury. *State* v. *Fiske*, 63 Conn. 388, 392, 28 Atl. 572. The court did not exceed its powers. It did not indicate to the jury how to find the fact, but laid down the proper rule for their guidance in weighing the testimony and in determining whether his statements to the doctors were reliable, and told them that it was their function to find the fact. It is claimed that what was thus said indicated to the jury the court's opinion that the accused was falsifying. If this were true, it does not constitute error. In a case where a similar claim was made, we said that "to say that a court must in no case present evidence to a jury in such a way as by any possibility to indicate its own impression as to its significance, as tending to establish any point in the case, is to lay down a seemingly impossible rule for judicial conduct." *State* v. *Rome*, 64 Conn. 329, 337, 30 Atl. 57. The repetitions complained of arose out of the peculiar claims of the defendant which required a recurrence to the same testimony to make clear to the jury its bearing upon the different claims.

The thirteenth, fourteenth, fifteenth, sixteenth, and seventeenth assignments of error are copied into the defendant's brief and left without comment there. It has not been claimed that these instructions were improper in point of law, but in the oral argument it was said that they improperly indicated to the jury the

court's opinion that the accused was guilty. We think that these criticisms are without foundation.

There is no error.

In this opinion the other judges concurred.