THE STATE OF CONNECTICUT *vs.* ELWOOD B. WADE.

Third Judicial District, Bridgeport, April Term, 1921.
WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, JS.

It is no part of the duty of the jury to pass upon the punishment of an accused; and hence it is not error for the court in the trial of an accused for murder, where the defense asks for a verdict of not guilty on the ground of insanity, to refuse to charge that under such a verdict the accused will be subject to such restraint as is necessary to prevent his doing injury to the persons or property of others.

The State *v*. Wade.

In the present case the defense, which claimed such a verdict, asked the court to charge that a verdict of not guilty did not mean that the defendant would be entitled to be set at liberty, since the State had ample power to place him in such confinement and under such restraint as to protect the community against the consequences of his mental condition. *Held* that it was not error to refuse to give this charge, since the defense had at no time claimed a verdict of merely not guilty, and the request assumed that the defendant's mental condition was such as to justify restraint, which was a fact to be proved; and, moreover, whether an instruction, that a verdict of not guilty on the ground of insanity would subject the accused to necessary restraint, should be given, was for the trial court to determine in the exercise of its sound discretion.

The court refused to charge that if the jury found that, except under the prompting and encouragement of the wife of the man he killed, the accused exhibited no strong or adequate motive or intent for the deed, such facts had an important bearing upon the question of his mental condition. *Held* that the ruling was not erroneous, since the requested charge assumed, what the finding did not substantiate, that the accused had no strong or adequate motive for the deed except for such prompting, and, moreover, the charge as given was adequate upon the woman's connection with the killing.

It was not error to refuse to charge that the peculiarly atrocious details of the homicide were to be taken into consideration in connection with the accused's mental deficiency, on the issue of his sanity, since this request was improper as assuming the mental deficiency of the accused.

Another requested instruction was that the jury in weighing the testimony of a witness for the State were to give weight to his appearance and conduct on the witness stand, and to the depraved mind revealed by his own testimony. *Held* that it was not error to refuse to give this instruction, since it assumed as a fact the depraved mind of the witness, and, while the court had the right to express its opinion upon the testimony of a witness so long as it did not amount to a direction of the verdict, and was fair, and did not present the picture of the case out of focus, whether it should exercise the right was a matter for its wisest discretion, unreviewable unless clearly abused.

A medical expert for the State testified that he had applied a mentality test to the accused and that the accused registered a certain mental age. He was then permitted, against objection by the defense, to state that he had applied the same test to three witnesses who had been called by the State, two of whom had been presented with the accused in the same indictment upon which he was on trial. The State then claimed the results of these tests on the

The State *v.* Wade.

ground that the jury, having observed all these witnesses and formed some estimate of their mental character and intelligence, might thus test the reliability of the estimate of the mental age of the accused previously given by the medical expert for the defense. *Held* that this entire line of evidence was inadmissible, since it was of slight, if any, relevancy, and raised collateral issues; but that as the answers actually admitted were merely preliminary, and the evidence itself was excluded, these answers could have had no influence on the jury, and their admission was harmless error.

After this medical expert had testified that he had used a form of mental test employed by alienists for the defense, and had used certain tables of that test, it was proper to admit in evidence as an exhibit a printed copy of the blanks containing such tables, as a useful and time-saving procedure, obviating the necessity of propounding to the expert the many subjects upon the blanks.

A medical expert may be cross-examined, or counsel may argue to the jury, by reading opinions from medical treatises of two classes: (1) such as are shown by expert testimony to have been accepted by the medical profession, and (2) such as have helped form the opinion of the expert.

Such cross-examination must be confined to such parts of the authority as tend to contradict the opinion expressed by the witness and cannot be based upon some illustration or isolated case used by the authority to explain or illustrate his opinion.

The comparison of the mentality of an accused with that of a child is not a valuable criterion for measuring the responsibility of the accused for his act.

It was not proper to ask a medical expert whether in his judgment the accused possessed such mental capacity that he should be held to full accountability for his conduct, since that was the province of the jury, not the witness, to determine.

The trial court sustained an objection to a question, asked on cross-examination of a medical expert for the State, as to whether the accused when he committed the deed had that knowledge and understanding of what he was doing that pertains to ordinary men. *Held* that this was not the attempt to set up a standard of mental responsibility, but was designed to lessen the effect of the expert's opinion as to the accused's mentality, and was legitimate cross-examination; but that in view of the wide latitude which the cross-examination had been permitted to take, this court was satisfied that its exclusion did the accused no harm.

Medical expert evidence, though indispensable in trials, should be kept within reasonable bounds and not be permitted to prolong trials by injecting collateral issues and by pressing theories too far.

Argued April 4th—decided May 4th, 1921.

INDICTMENT for murder in the first degree, brought to the Superior Court in Fairfield County and tried to the jury before *Hinman, J.;* verdict and judgment of guilty, and appeal by the accused.  *No error.*

*William H. Comley, Jr.*, with whom was *Frederick E. Morgan*, for the appellant (the accused).

*Homer S. Cummings*, State's Attorney, with whom, on the brief, were *Galen A. Carter*, Assistant State's Attorney, and *E. Earle Garlick*, assistant to the State's Attorney, for the appellee (the State).

WHEELER, C. J.   The accused, Wade, was tried upon an indictment charging him with the commission of murder in the first degree by the killing of George B. Nott at Bridgeport on the 29th day of August, 1920.

The State offered evidence to prove, and claimed to have proved, that Wade killed Nott in the manner charged, and that the circumstances attendant upon the killing disclosed deliberation, preparation and premeditation, and a cruelty so great as to characterize the homicide as one of singular ferocity.   And from this evidence, together with evidence disclosing the calculated attempt of Wade to escape the consequences of his deed, the State claimed to have proved beyond a reasonable doubt that the accused was guilty as charged of a wilful, deliberate and premeditated homicide, constituting in our law murder in the first degree.

The defense did not contest the State's charge. Their claim was and is that Wade was insane when he committed this awful homicide, and that he represented a subnormal degree of mentality, a defective mental constitution with a deficient self-control, so much so that he cannot meet the reasonable demands of family and community life.   This they claimed to have proved from the detailed picture of his life, from his heredity,

from the observation and tests of competent experts, upon which they expressed an opinion upon his mental condition, and from the opinion expressed by them upon the man and the crime as detailed to them in the hypothetical question.

The State joined issue upon these claims, and maintained that Wade possessed, at the commission of the homicide, mind enough to be the subject of punishment, since he fully met the test of our law, having the mind, capacity, reason and understanding to enable him to judge the nature, character, and consequences of the act charged against him, that the act was wrong and criminal, and that the commission of it would properly and justly expose him to penalties, and that he could distinguish between right and wrong, and was not overcome by an irresistible impulse arising from disease.

The charge was a complete, clear and capable presentation of the issues involved and the law applicable to those issues. A jury could not well help understanding it and finding in it a sufficient guide for the performance of the heavy responsibility which their duty as jurors cast upon them. In only four particulars has the counsel for the accused complained of the charge. Our most diligent reading of the charge has failed to find one other particular which could with any show of reason have formed the basis of another assignment of error by the accused.

The first assignment of error is the failure of the court to make this charge, as requested: "The defendant asks the court to instruct the jury that a verdict of not guilty in this case does not mean that the defendant would be entitled to be set at liberty. The State has ample power under the statutes now in existence to place him in such confinement and under such restraint as to protect the community against the consequence of his mental condition."

The trial court properly refused to comply with this request.  The defense at no time in the trial claimed that the verdict should be not guilty.  The record shows plainly that the one controverted issue was as to the mental responsibility of the accused.  And the only verdict which the defense claimed was that of, "Not guilty on the ground of insanity."  The form of the second sentence of the request was bad.  It assumed that the mental condition of the accused was such as to justify his restraint.  That was a fact to be proved, not an assumption to be made by counsel.  But, had the request been framed so as to avoid these fatal defects, we think the court was not obliged to give it to the jury. It is no part of the duty of the jury to pass upon the punishment of the accused.  *State* v. *Main*, 75 Conn. 55, 63, 52 Atl. 257.  The jury determines the guilt or innocence of the accused; the court pronounces sentence. If the jury find an accused guilty as charged, but are not satisfied beyond a reasonable doubt of the sanity of the accused at the time of the charge, their verdict should be, "Not guilty upon the ground of insanity." With the rendering of the verdict, the duty and responsibility of the jury ends.  The enforcement of the verdict by the pronouncement of sentence and the rendition of judgment is a duty resting wholly with the court. It will not help the jury in the performance of their duty to know what the penalty may be, nor what disposition will be made of the accused.

The precise question was decided adversely to the claim of the accused in *State* v. *Daley*, 54 Or. 514, 522, 103 Pac. 502, 104 id. 1.  In some cases, where the insanity as well as the guilt of the accused is clear, the trial judge has instructed the jury that a verdict of not guilty on the ground of insanity will subject the accused to such restraint as to prevent his doing injury to the persons or property of others.  *State* v. *Richards*, 39 Conn. 591, 595,

Usually where this instruction is given it is with the purpose on the part of the judge that the jury may not find an insane person guilty, but not guilty on the ground of insanity. Whether such an instruction shall be given is for the trial judge to determine in the exercise of his sound discretion.

The second assignment of error in the charge is in part as follows: "If the jury finds that he [Wade] . . . was under the influence of a woman who was prompting and encouraging him either to kill or to make an assault upon her husband, and that except under that prompt-ing and encouragement, he exhibited no strong or adequate motive or intent to kill the husband, those facts should be regarded as having an important bearing upon the question of the defendant's mental condition."

The request assumes what the finding does not sub-stantiate, that, except under the prompting and encour-agement of Mrs. Nott, the accused exhibited no strong or adequate motive or intent to kill her husband, and for this reason alone the request was properly refused. Further, the court charged the jury adequately upon the subject of the relation to and participation by Mrs. Nott in the homicide, when it instructed them as follows: "You may consider the relation to and partic-ipation in the homicide by Mrs. Nott and Johnson, and the influence or effect, if any, of them or either of them upon the acts and conduct of the accused, so far as the same may properly be regarded as bearing upon or characterizing the mental capacity and condition of the accused at the time."

The third assignment of error in the charge is in the failure to give the request that "the facts and details of this homicide which make it peculiarly atrocious and shocking, are to be taken into consideration in connec-tion with the mental deficiency of the accused and his manner and conduct during the prior period of his life

as shown by the evidence, in determining whether at the time of the act he had sufficient mind to understand the nature and consequences thereof."

The court was right in declining to give the charge in its exact terms, for it assumes the "mental deficiency" of the accused as one of the accepted facts in the case, instead of treating it as one of the facts to be found by the jury.

The remainder of the request might properly have been given. An adequate charge could not fail to call the attention of the jury to the necessity of their considering the details of the homicide, not only in determining its degree, but in determining the mental responsibility of the accused at the time of the commission of the homicide. And this the charge does do with as much particularity as our law requires. The reading of the charge makes this so patent that we shall not quote the passages which substantiate this. The claim of the defense that the charge "was inadequate because it did not lay sufficient emphasis upon the barbarity and cruelty of the deed as tending to indicate insanity," is without merit.

The fourth assignment of error in the charge is in the refusal to give the request that, "in weighing the testimony of the witness Rooney, they are to give weight to his appearance and conduct on the witness stand and to the depraved mind revealed by his own testimony."

The charge upon the credibility of witnesses was complete and exact; its error consists, the defense claims, in its failure to make specific reference to the testimony of Rooney and to its unreliable character. This request assumes as a fact the depraved mind of Rooney as revealed by the testimony, but this was a fact to be found by the jury from the evidence. For this reason the request was an improper one. The court had the right to express its opinion upon the evidence and upon the

testimony of a witness, so long as it did not amount to a direction of the verdict, and was fair, and did not present the picture of the case out of focus. Whether the trial court should exercise this right or not in a given case is a matter for its wisest discretion, unreviewable except in a clear case of abuse of that discretion.

Six rulings on evidence which are assigned as error, are pressed in the argument of the appeal.

1. During the trial Ethel M. Nott and Johnson, who were presented with Wade in the indictment upon which he was on trial, together with Rooney, had been called as witnesses by the State and testified at length. Thereafter Dr. Lynch, called as an expert in rebuttal by the State, testified that he had personally examined Wade on three occasions, and was of the opinion that Wade was sane. Upon cross-examination he testified that Wade had an undeveloped mind, but was not insane; that he was a medium grade moron, meaning a stupid individual, and that he had applied to Wade the Stanford modification of the Benet-Simon test, and that, under this test, Wade registered a mental age between nine and one half and ten and one half years. Upon redirect examination Dr. Lynch testified that the Benet-Simon test is not an adequate test, being only a relative test, and by no means an absolute index of mental age. He was then inquired of: "Q. Well so much for these tests and their relative importance. Can you, Doctor, tell us the mental age of Ethel Nott?" and answered, "Eleven years and eleven months." Counsel for the accused asked that this answer be stricken out as irrelevant and immaterial. The State's Attorney stated that he purposed offering similar proof as to the mental age of Johnson and Rooney. Dr. Gesell and Dr. Diefendorf had testified for the defense that they had applied the Stanford modification of the Benet-Simon test to Wade and had given his mental age as measured

by such test. The State claimed that this evidence would enable the jury to weigh more accurately and understandingly the testimony of Dr. Gesell and Dr. Diefendorf; that the defense is based upon insanity of a type growing out of dullness of comprehension, stupidity, and of low mental age; that the offer is of the test applied to Nott, Johnson and Rooney, identical in kind to that applied to Wade by these experts; and that since each of these persons has been a witness in the case the jury must have formed some mental estimate of their mental character and intelligence, and by comparison of this estimate with the result of the test made they may determine the reliability or unreliability of the estimate of the mental age of Wade, given by the experts for the defense. The court granted the motion and struck out both the answer and the question. Thereupon the State's Attorney inquired of the witness whether he had applied to each of these three persons the same mental tests he had applied to Wade. The court admitted the question, and the defense duly excepted, and the witness answered that he had. The court's ruling constitutes the fifth assignment of error. The State's Attorney regards the ruling excluding the results of the Benet-Simon tests as of importance, and earnestly requests us to express an opinion upon the ruling in order that the practice may be settled. This we shall do briefly.

It is our rule that any fact may be proved which "logically tends to aid the trier in the determination of the issue." *Plumb* v. *Curtis*, 66 Conn. 154, 166, 33 Atl. 1000. Let us test this offer by this rule. What the State's Attorney aimed at was to show what the tests developed as to these three witnesses, in order that the jury might compare their own conclusion, as formed from their observation of the witnesses, with the results of these tests, in order to demonstrate the unreliability of these tests, and, by comparison of this result with the estimate

in the case of Wade, to discredit that estimate and the Benet-Simon tests. If the inquiry is permitted as to Nott, Johnson and Rooney, the experts for the defense must be permitted to make similar inquiries concerning other witnesses or other persons whom they have subjected to these tests. The same open-door logic must put in issue not only the mental age, but necessarily the mental capacity, of each of those whose mental age has been laid before the jury. The offer raised collateral issues, far remote from Wade's defense of insanity. Such investigation would carry the examination of experts into fields unrelated to the issue of insanity, or so distantly related to it as to be logically inconsequential. The determination of the remoteness of evidence is one for the discretion of the trial court unless the record indicates an abuse of discretion. *State* v. *Kelly*, 77 Conn. 266, 269, 58 Atl. 705; *Leonard* v. *Gillette*, 79 Conn. 664, 668, 66 Atl. 502. Even though this offer could be deemed of some relevancy, it conflicted with the rule expressed in *State* v. *Sebastian*, 81 Conn. 1, 4, 69 Atl. 1054: "Evidence may be relevant, and yet its relevancy may be so slight and inconsequential that to receive it would be to distract attention that ought to be concentrated on what bears directly on vital points, and confuse rather than to illuminate the case."

Medical expert evidence is indispensable as an aid in the administration of justice. The tendency in its use is to spin its theories too fine and too far away from the real issue. It should be kept within reasonable bounds, and should not be permitted to inject collateral issues and prolong trials beyond the point where the truth is served. The trial court rightly excluded from the consideration of the jury the results of these tests. We think its ruling should have gone further, and excluded the evidence of Dr. Lynch as to the fact that he had made the same test as to Nott, Johnson and Rooney.

In its brief the State characterizes the purpose of its offer thus: "Of course, the essence and purpose of the examination was to ascertain what the mental ages of the three witnesses were." And the inquiry as to whether Dr. Lynch had applied these tests to ascertain the mental ages of these witnesses was preliminary to the ascertainment of the results of the tests. Whether the doctor had made the tests or not was unimportant. Hence the ruling, though erroneous, was harmless. It could have no influence in the decision of any issue involved in this case. These questions were undoubtedly admitted by the court because they seemed to the court harmless, and to be merely a preliminary setting to evidence, to the exclusion of which the State's Attorney had excepted. There is upon this record no possibility that this evidence, by itself or in connection with any other evidence in the case, could have had any influence upon the decision of the jury of the issue of the mental responsibility of Wade, and hence its admission was a harmless error.

2. After the alienists for the defense testified that they had applied to Wade the Benet-Simon test, and used the tables of that test, Dr. Lynch testified that he too had applied this test and used these tables. The State offered a printed copy of these blanks containing the tables which had been used by Dr. Lynch and the other alienists, and asked to have them marked as an exhibit. The defense excepted to its introduction. The exhibit obviated the necessity of propounding to the witness the many subjects upon these blanks. It was properly admitted upon the exact ground claimed by the State, as "a useful and time-saving procedure." It was part of Dr. Lynch's testimony, and the admission and marking as an exhibit of these blank forms was in accordance with our ordinary procedure. Cross-examination of the witness as to the contents of the blank

which formed a part of his examination of Wade was open to the defense.

3. Upon cross-examination Dr. Lynch testified that Goddard was one of the authorities upon the question of defective mentality. Counsel then read from Goddard's work on "The Criminal Imbecile": "In the case of Jean Gianini although he is sixteen years old, he has only the mentality of a child of ten, or, if a possible error of two years were allowed he would still have only the mentality of twelve and would be an imbecile"—and inquired of the witness: "Q. Would you regard the quotation which I have read as representing the opinion accepted among alienists of authority as to the age limits of imbeciles?"

The court excluded the question upon the ground that the selection read was an illustration by use of a selected case and not a statement of the opinion of the author. The ruling followed our practice. It permits the expert to be cross-examined as to the authorities which have helped to form the opinion he has expressed, or such authorities as he accepts upon the subject under review, and then the cross-examiner may incorporate in questions such opinion as may be found in the authorities which tend to contradict the expert witness, or in the argument of the case counsel may read to the trier such portions of these authorities as are relevant and material in contradicting the opinior testimony of the expert witness. In *State* v. *Hoyt*, 46 Conn. 330, the right of an accused to read standard medical works upon insanity, in the argument to a jury by counsel for the accused, was in issue. In sustaining the practice we said (p. 337): "And in this jurisdiction for a long series of years counsel have been permitted to read to the jury, as a part of their argument upon this part of their case, extracts from such treatises as by the testimony of experts have been accepted by the profession as authority

upon that subject: such treatises as have helped to form the opinion expressed by the expert."

It is futile to point out after this long lapse of time that only one class of treatises is referred to in this extract, viz. such as have been accepted by the profession as standard, and have helped to form the opinion as expressed by the expert. Trial courts and the profession have construed this extract to refer to two classes of treatises: (1) Such as have been accepted by the medical profession; and (2) such as have helped form the opinion of the expert. This practice, continued since this opinion was announced in 1878, has become an established right, and ought not to be changed unless experience clearly demonstrates its unwisdom. The fact is otherwise. Under the supervision of the trial court and with the good sense of the profession, the liberality of our practice has not led to its abuse.

The question of the cross-examiner must be confined to such parts of the authority as tend to contradict the opinion as expressed by the witness. It cannot be based upon some illustration or isolated case used by the authority to explain or illustrate his opinion. The facts stated in the illustration or cited case do not contradict, nor tend to contradict, any opinion expressed by Dr. Lynch. The inquiry was not a permissible one under our practice.

The subject-matter of the inquiry or comparison of the mentality of an accused with that of a child is not a valuable criterion for measuring the responsibility of an accused for his act. In *State* v. *Saxon*, 87 Conn. 5, 16, 86 Atl. 590, we disapproved of this instruction: "If you find that the mentality of the accused was very low, and not as high in some departments as a child six years old, then your verdict should be acquittal." And we said: "A child, even if the average one be taken, furnishes, at best, a poor criterion by which to test the mentality of

a person of full age." It should be said that Dr. Lynch defined an imbecile as "one who has a mental age of between three and seven years," and so far as the record discloses no one had contradicted this opinion. Moreover, the cross-examination of Dr. Lynch subsequent to the inquiry concerning this extract from Dr. Goddard's book appears to have gone fully into whatever this inquiry could have been intended to embrace. In no respect was the accused harmed by the ruling.

4. The eighth assignment of error is the court's exclusion of the question asked of Dr. Lynch on cross-examination: "Q. I understand, Doctor, that in your judgment this man possesses such capacity to know and understand that he should be held to full accountability for his conduct—that he may be held to full accountability for his conduct?" Upon objection the court ruled that the question should conform to the legal standard and excluded it. The ruling was correct. It was the province of the jury to weigh the evidence and determine the responsibility of the accused upon the evidence and by the standard of our law, and not that of the expert witness. We know of no instance where this question or one of like import has been permitted. In *State* v. *McGruder*, 125 Iowa, 741, 141 N. W. 646, the court says of a similar claim: "Of course, a witness may not be asked whether in his opinion the accused is responsible for the act committed."

5. The ninth assignment of error is the exclusion of the question asked Dr. Lynch upon cross-examination: "Q. Do you think that the young man Wade described in the hypothetical question propounded by the State, when he crept up those stairs the morning of Sunday, the 29th of August, had that knowledge and understanding of what he was doing that pertains to ordinary men?"

6. Objection was made that the question attempts

to set up a standard of mental responsibility different from that known to our law. The court sustained the objection. We do not read the question as an attempt to set up as a standard of mental responsibility the knowledge and understanding of the ordinary man. Its purpose was to lessen the effect of the opinion of the State's expert that the accused did possess this standard of mind by having him admit that he did not possess that of the ordinary man. This was legitimate cross-examination, but the ruling did no harm. It came during a lengthy cross-examination. In its course "counsel for the defendant was permitted to inquire of the witness whether the defendant Wade would, of his own capacity, be able to make of himself a responsible citizen; whether, leaving school at the age of thirteen years, he would have a fair chance in competition with others; whether his method of killing Nott had any bearing upon his sanity or insanity; whether his method of so doing was inhuman; whether in determining whether a mental defective comes within the class of those who are sane or in the class of those who are insane, there is room for doubt or error; whether a child of tender years knows the difference between right and wrong; whether that knowledge is adequate or inadequate; what the mental state of the accused was as compared to that of a child; what knowledge a lunatic had of his deed when he committed an insane assault upon a victim; and generally such questions as were designed to test the opinion and judgment of the witness relative to the mental capacity, understanding and accountability of the accused."

It thus appears that wide latitude was accorded the counsel for the accused in the cross-examination of this expert, and it is indubitable that any information likely to be elicited in the answer to this question could not have affected the opinion expressed by the expert,

or had the effect of impairing his conclusions. An accused may in knowledge and understanding be below that of the average man, and still be held criminally responsible for the consequences of his act.

As we consider this question in connection with the facts in evidence before the jury, we are entirely satisfied that its exclusion did the accused no harm.

There is no error.

In this opinion the other judges concurred.