STATE OF CONNECTICUT *v.* JOHN B. DONAHUE

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued October 5—decided November 9, 1954

*Albert L. Coles* and *Philip H. Smith,* for the appellant (defendant).

*Lorin W. Willis,* state's attorney, with whom, on the brief, was *Otto J. Saur,* assistant state's attorney for the appellee (state).

BALDWIN, J. The defendant has appealed, after a trial to a jury, from his conviction on a charge of murder in the first degree. He assigns error in the refusal of the trial court to set aside the verdict, in the charge, in the finding, and in rulings made during the trial.

We shall consider first the denial of the motion to set aside the verdict. The jury could reasonably have found the following facts: On Friday, February 13, 1953, about 9 o'clock in the evening, Officer Ernest Morse of the Connecticut State Police was found lying in the westbound lane of the Merritt Parkway in the town of Trumbull. He was suffering from a wound inflicted by a bullet fired from a revolver. He died shortly thereafter.

The defendant, age twenty, was living with his parents in Arlington, Massachusetts. He was on parole from the Concord reformatory in that state. About 5 o'clock in the afternoon preceding the shooting, he stole an Oldsmobile sedan in Brookline, Massachusetts, and set out for New York City, where he had arranged to meet a young woman at 9:30 that evening. He placed on the seat beside him a revolver which he had previously stolen, loaded with bullets he had also stolen. About twenty-two minutes before nine the defendant stopped at a gasoline station on the Wilbur Cross Parkway in North Haven. After he left the station he drove at a high rate of speed. Officer Morse saw him and gave chase.

He overtook and stopped the defendant in the town of Trumbull near the Stratford line. The officer parked his car off the pavement in front of the Oldsmobile. He alighted and approached the Oldsmobile on the driver's side. He asked for the defendant's license and registration. The defendant, having no license, handed the officer his wallet. While the officer was looking at the wallet the defendant picked up the gun from the seat beside him, took the safety catch off and leaned over and released the hand brake of the car. At this point the officer said, "Hey!" The defendant pulled the gun and shot him. The officer fell to the ground. The defendant replaced the gun on the seat and sped away. He left the parkway in Trumbull, abandoned the Oldsmobile, stole a Mercury and proceeded toward New York on the Post Road. Recognized and pursued by the police, who had been alerted, he quit the Mercury in Greenwich after a burst of machine-gun fire and ran and hid in the loft of a garage. Discovered, he surrendered. The revolver with which he had shot Officer Morse was found in the garage where he had been hiding.

To constitute murder in the first degree, the killing must be wilful, deliberate and premeditated. General Statutes § 8350; *State* v. *Dortch*, 139 Conn. 317, 323, 93 A.2d 490. The defendant, at the time he shot Officer Morse, was on parole from a penal institution. To be apprehended with a stolen automobile would mean the termination of his parole. He had placed a loaded revolver on the seat beside him when he left Brookline in the stolen automobile. While the officer was questioning him, he released the safety catch on the gun and freed the hand brake, preparatory to dashing off in the car to escape arrest. Such conduct spells wilfulness, premeditation and deliber-

ation. *State* v. *Dortch,* supra; *State* v. *Smith,* 138 Conn. 196, 202, 82 A.2d 816; *State* v. *Palko,* 121 Conn. 669, 676, 186 A. 657; *State* v. *Simborski,* 120 Conn. 624, 629, 182 A. 221. If the jury refused to find that the defendant was mentally incapable of committing a wilful, deliberate and premeditated killing, and if they had been properly instructed regarding the consideration of the testimony offered to establish that fact, and its legal effect on their verdict, a verdict of guilty of murder in the first degree was inevitable. The motion to set aside the verdict as against the evidence was properly denied.

We now consider the assignments of error addressed to the charge. The defendant did not testify in his own behalf. He offered evidence to prove the following facts: He is the oldest of three children born of respectable parents. His father has continuously held a responsible executive position. His mother, a schoolteacher before her marriage, has been a good homemaker and housewife. His brother and sister have grown up as good and obedient children. The family has always had a comfortable home in good surroundings. In his childhood, the defendant was unusually active and energetic but was irresponsible and impulsive in his conduct. He had no affection for his parents in spite of their efforts to win his confidence and love. At times he showed deep hostility toward them. His conduct in nursery and grade school was not good. When he applied himself he did well, but he did not choose to apply himself. He took no part in sports because he was a poor loser. He gave up piano lessons because he would not practice. In his early teens he undertook the hobby of constructing model airplanes. He later turned to radio, working alone in the attic of his home, where a place was provided

for him. It was thought that he was showing real interest and some aptitude in this field until it was discovered that a television set he represented as having been made by him was in fact stolen.

His criminal career began with the theft of a jukebox from a hotel. This precipitated a police investigation which disclosed that he had stolen the materials for the radios he had constructed. He was presented in several town courts and placed on probation. Arrested in connection with the theft of an automobile, he was subjected to a further period of probation. On recommendation of the probation officer, the parents consulted Dr. Philip Quinn, a qualified psychiatrist, who examined and treated the defendant. While under treatment, he was arrested for kidnapping and attempting to rape a young girl. In April, 1952, after two years' confinement at the Concord reformatory, he was released. His family had moved the previous December to a new home some distance from the old one in order to give him a fresh start. The defendant went to work where his father was employed. During this period his father discovered a revolver in his possession. After some difficulty he surrendered it to his parents. The defendant was later admitted to college, having completed high school studies while in the reformatory. In college he did very well for a time but ceased to apply himself. His grades became poor. While at college he made the acquaintance of a young man and they went out together socially. This young man observed him as retiring, overly mature, a boy who did not enjoy sports or mix with the college crowd.

Shortly after the first of January, 1953, the defendant obtained employment at a pharmacy in Boston where he worked evenings and week ends.

On February 11, he made an appointment to meet a young woman in New York the following Friday night at 9:30. He had met her previously while in the company of his college friend. On Friday, February 13, he left home, presumably for work in the pharmacy. He later called his mother to say that he was going to a party that evening. Instead, he stole the Oldsmobile in Brookline and started for New York City.

Dr. Quinn, who treated the defendant from November, 1949, to February, 1950, diagnosed his condition then as "primary behavior disorders with neurotic traits." The defendant showed signs of nervousness, tension, anxiety concerning himself, concern over his appearance and a feeling of insecurity. The troubles he got into were impulsive acts and in retrospect he knew the difference between right and wrong. Dr. Quinn again examined the defendant in the county jail in Bridgeport on May 13, 1953. He diagnosed his condition as a character disorder called "psychopathic personality." This is a term applied to a group of reactions characterized by a lack of insight and judgment, hostility, aggressive behavior, egocentricity and lack of emotional concern. A psychopath may know what he is doing and yet, simultaneously, act impulsively. Dr. Quinn could not say whether at the time of the shooting the defendant knew what he was doing or whether he was acting impulsively and without deliberate premeditation or judgment. Dr. Larry Hemmendinger, a qualified clinical psychologist, also conducted a series of psychological examinations of the defendant at the county jail. He found that the defendant had an intelligence quotient of 130, which is superior. In simple situations the defendant was able to do exceptionally well. When the test became more

difficult he acted impulsively, his ability to use his intelligence was lost and he acted under emotional forces without rational control. Dr. Hemmendinger stated that the defendant's condition affected his ability to reason, or to think out a course of conduct. At the time he shot the officer, the defendant knew the difference between right and wrong in an abstract sense but was unable to apply, or to act upon, this knowledge. In Dr. Hemmendinger's opinion, the defendant is an impulsive, egocentric person who does not learn from experience or react with the normal, expected, emotional reactions. His behavior is characterized by impulsivity. Upon the evidence, the defendant maintained that he was not guilty of murder in the first degree because he had not formed a deliberate and premeditated intent to kill.

The defendant did not claim that he was insane. He did claim that by reason of his mental deficiencies or the abnormal condition of his mind he was guilty of murder only in the second degree. The error assigned is the alleged failure of the court to present this issue properly to the jury and the withdrawal of it from their consideration. In passing upon these claims, we must bear in mind that the crime charged was that the defendant "wilfully, deliberately, with premeditation and malice aforethought, did shoot and kill" Officer Morse. In its charge, the court emphasized that proof of wilfulness, deliberation and premeditation, beyond a reasonable doubt, was indispensable to a conviction of murder in the first degree. The court explained to the jury that murder under our law is divided into two degrees, first and second, that only a wilful, deliberate and premeditated killing is murder in the first degree, and that all other kinds of murder constitute murder in the

second degree. The court pointed out specifically that these terms furnish the test for distinguishing between murder in the first and murder in the second degree. It charged that the jury could find murder in the first degree only if there were "mind enough and will enough on the part of the perpetrator to form a specific intent to choose his course upon consideration and especially to form his purpose and put it into action, and mind enough and will power enough and reasoning power enough to plan and arrive at the specific design and intent to kill and to carry out that plan." The court discussed the time necessary for deliberation and premeditation and pointed out that a killing committed in a sudden burst of passion or uncontrolled anger lacked the element of deliberation. It then charged that "a killing by one who for any cause at the time the act was committed was incapable of conceiving and carrying into execution a deliberate plan to kill or was mentally incapable of intent or premeditation or who was beyond the power of self control at the time lacks the necessary elements of murder in the first degree." The court called the attention of the jury to the claims made by the defendant and told them that his mental condition at the time of the shooting was a vital consideration. It specifically said that "[t]o be the subject of punishment one must have mind and capacity, reason and understanding enough to . . . judge of the nature, character and consequence of the act charged against him, that the act is wrong and criminal and that the commission of it will justly and properly expose him to penalty, and he is within the law's protection if his mind is so diseased or abnormal as to render him incapable of resisting an impulse to do an otherwise criminal act." See *State* v. *Wade*, 96 Conn. 238, 242, 113 A. 458.

Near the end of its instructions, the court charged that the jury might find the defendant guilty of homicide in a lesser degree than murder in the first degree. It pointed again to the elements of wilfulness, deliberation and premeditation and charged that if any one of these was not established beyond a reasonable doubt the jury might find the defendant guilty of murder in the second degree. It stated specifically: "If you are satisfied beyond a reasonable doubt that all the elements . . . except the presence of wilfulness, or deliberation or premeditation or specific intent to kill, if you entertain a reasonable doubt that any one of those elements entered into the killing, your verdict should be guilty of murder in the second degree." The charge fully complied with the defendant's requests. It was an accurate statement of the law and was adequate to guide the jury in the application of the evidence offered on the defendant's claims. *State* v. *Dortch,* 139 Conn. 317, 323, 93 A.2d 490; *State* v. *Saxon,* 87 Conn. 5, 16, 86 A. 590; *State* v. *Smith,* 49 Conn. 376, 382; *Andersen* v. *State,* 43 Conn. 514, 517; *State* v. *Johnson,* 40 Conn. 136, 143.

The defendant alleges error because the court charged the jury that, if they found the defendant guilty of murder in the first degree, under General Statutes, Cum. Sup. 1951, § 1406b (Cum. Sup. 1953, § 2463c) they might recommend imprisonment for life. The defendant challenges the constitutionality of the statute and the form of the charge as given. It is fundamental that no one may question the constitutionality of a statute unless he is harmed by the application of it. *Carroll* v. *Socony-Vacuum Oil Co.,* 136 Conn. 49, 59, 68 A.2d 299. Before the statute in question was enacted, the only penalty which could be imposed upon a verdict of guilty of murder in the first degree was death. General Statutes § 8351.

It is the addition of the provision permitting the jury to recommend the alternative penalty of life imprisonment of which the defendant complains, claiming that it renders the whole statute invalid because it permits discrimination without establishing standards to control the exercise of the jury's discretion. Obviously, the addition of this provision has not harmed the defendant in this case. If anything, it resulted to his advantage in that it gave him a chance to receive a sentence of life imprisonment rather than of death. In any event, the jury did not exercise the power given to them by the clause of the statute which he claims is invalid. It follows that the defendant has no standing to attack the validity of the sentence on the ground that the statute under which it was imposed is unconstitutional. The court read the statute, told the jury that the statutory penalty for first degree murder is death, "subject only to the condition that the jury in its absolute discretion chooses to recommend imprisonment for life," and that such a recommendation should be made upon consideration of all the evidence. The defendant's claim of error is without merit. Notes, 17 A.L.R. 1117, 1125, 87 A.L.R. 1362, 1364; 26 Am. Jur. 541, 562; see State v. Zuro Yamashita, 61 Utah 170, 171, 211 P. 360.

The defendant further charges error in the court's ruling on the offer of certain evidence relating to his mental capacity. The questions asking Dr. Quinn to state the difference between the conduct of the defendant and that of a normal person were properly excluded. The only proper function of the medical witness offered by the defense was to furnish expert testimony upon the mental capacity of the defendant to commit murder in the first degree. The question propounded was altogether too general in its scope

to elicit any relevant testimony that would assist the jury on this issue. Dr. Hemmendinger, the psychologist offered by the defense, was asked a series of questions to ascertain what his conclusions were concerning the kind of behavior which could be expected from the defendant in different situations. The court properly refused to allow answers to these questions, upon the ground that they called for pure speculation. The defense further propounded two hypothetical questions to elicit an expression of opinion from the witness as to whether the defendant acted in a wilful, deliberate and premeditated manner when he shot Officer Morse. These were questions for the jury and not for the expert witness, and they were properly excluded. *State* v. *Wade,* 96 Conn. 238, 252, 113 A. 458; Underhill, Criminal Evidence (4th Ed.) pp. 435, 620. The three other rulings complained of were correct.

The defendant has excepted to the finding concerning the rulings on evidence claimed to be erroneous. He contends that the finding includes argumentative material harmful to a proper presentation of the question involved. We have ignored the claimed argumentative material. In reviewing the rulings, we have referred to the evidence printed in the appendix to the defendant's brief (before us for the purpose of passing upon his motion to set the verdict aside) for a full statement of all the circumstances. Maltbie, Conn. App. Proc., p. 102. The defendant's exceptions have no merit.

There is no error.

In this opinion the other judges concurred.