Tompkins v. West.

· John Tompkins and Wife vs. Henry E. West and
ANOTHER.

New London Co., May T., 1888.    Park, C. J., Carpenter, Pardee,
Loomis and Beardsley, Js.

Upon the question whether the plaintiff had been internally injured in the
chest, there being no external marks, the following question was asked
by the plaintiff's counsel of a medical expert:—" In your opinion can
or cannot the tissue of the lungs be broken by violent outside pressure,
if at the time the lungs are inflated, so as to produce hemorrhage with-
out visible external cause ? "   Held to be no objection to the question
that there was no proof that the lungs were inflated at the moment of
the injury, that being a matter hardly admitting of proof.   The ques-
tion could only be understood as referring to such inflation as would
occur during the regular process of respiration.

In examining a medical expert counsel may read questions from a medical
book for the purpose of making himself more clearly understood.

In a suit brought by husband and wife for an injury received by the wife
through the negligence of the defendants, the judge instructed the jury
that, in estimating the damages, they were "to consider the nature
and extent of her injuries, her physical and mental suffering, the ex-
penses of her sickness, the duration of her illness and disability, and
any other circumstances tending to prove the direct loss and damage
she had sustained from the defendants' negligence."   Held that, as she
was a married woman, the expenses of her sickness would have been
incurred by her husband and not by her, and could be sued for only by
him, and that it was error to direct the jury to include them in their
verdict.

And held that the verdict could not be saved by a presumption that the
jury included in their verdict no improper element of damage.

Nor by the fact that no claim was made by the plaintiffs to recover for this
expense, and no evidence offered with regard to it, and that no request
was made by either party for a charge upon the subject.

Nor by a presumption that these expenses were paid out of the wife's sep-
arate estate; there being no proof that she had any such estate.

The instruction being direct and explicit, it could not be presumed that the
jury disregarded it.

[Argued May 30th—decided July 7th, 1888.]

Action by husband and wife for an injury to the person·
of the wife through the negligence of a servant of the de-
fendants; brought to the Superior Court in New London
County and tried to the jury before *Phelps, J.*

Upon the trial the plaintiffs claimed that Mrs. Tompkins had been internally injured in the chest, and that the injury produced frequent and serious hemorrhages, which had continued to occur at intervals until within a short time, and that before the accident she was generally healthy and strong, and had never had hemorrhages except when she was very ill with typhoid fever a few years ago.

One of the most prominent claims of the defense was that she could not have been internally injured as she claimed, because there were no visible external marks of injury on her person. The last witness offered in chief by the defense was Dr. Paddock, who was called as a medical expert. On his cross-examination he was asked this question: "In your opinion as a medical man, can or cannot the tissue of the lungs be broken by outside pressure, strong, violent and sudden, if at the time the lungs are inflated with air, so as to produce hemorrhage without extravasation or visible external cause?" To this question the counsel for the defense objected on the ground that it was leading, and was not legitimate cross-examination of anything as to which the witness had been inquired of or had testified, and because the testimony should have been offered in chief, and also because it was a hypothetical question, not based on proved or admitted facts. The plaintiffs' counsel thereupon offered to make the witness their own. In the exercise of its discretion the court overruled the objection that the question was leading, and was not proper cross-examination, and that the testimony should have been offered in chief, and as a hypothetical question allowed it to be put on the ground that it did call for an opinion upon facts admitted or claimed to have been proved in the case. The answer of the witness was in the affirmative.

The plaintiffs called in chief, partly as an expert and partly as one of the physicians who professionally attended Mrs. Tompkins after her injury, Dr. Nelson, and asked him certain technical medical questions, reading them from a standard medical authority, in order to make himself clearly understood by the witness. The defendants' counsel objected to

that mode of inquiry.   The plaintiffs' counsel withdrew the questions and answers, and verbally, and from memory, put them in substantially the same language.   The counsel for the defendants objected, and the court overruled the objection.

Upon the question of damages the court was not requested to charge, but did instruct the jury that if they found the defendants to have been negligent, as claimed by the plaintiffs, the plaintiffs were entitled to recover just damages for the injuries which Mrs. Tompkins received, and that in estimating those they were to consider her peril and danger, the nature and extent of her injuries, her physical and mental pain and suffering, the expenses of her sickness, the duration of her illness and disability, and any other circumstances tending to prove the direct loss and damage she had sustained from that negligence."

In a former part of the charge the jury were told that the burden of proof was on the plaintiffs, not only to prove the negligence of the defendants, but also that Mrs. Tompkins was herself at the time in the exercise of reasonable care. No claim was made by either party on the trial relative to the question of the expenses of Mrs. Tompkins's sickness, and no evidence on that subject was introduced, nor was the court requested by counsel for either party to instruct the jury on that subject as an element of damages.

The jury returned a verdict for the plaintiffs for fifteen hundred dollars.   The defendants appealed, on the ground of error in the rulings and charge of the court.

*R. Wheeler* and *S. Lucas*, for the appellants.

1. The defendants' objection to Dr. Paddock's testimony should have been sustained.   It was neither admitted nor proved that Mrs. Tompkins's "lungs were inflated with air" at the time of the accident.   The fact that counsel objected upon the grounds stated shows that no such fact was admitted, and it would have been strange indeed for Mrs. Tompkins to have testified that her lungs at the time of the accident "were inflated with air."   The question did not call for an

answer as to whether the tissues of Mrs. Tompkins's lungs could have been broken in the manner testified to and under the circumstances claimed, but whether any of the tissues of any person's lungs could be broken by outside pressure, if at the time the lungs were inflated with air, without leaving any visible external marks. It was simply an opinion of what might happen in some case. The same objection to such an opinion being asked exists, as against reading the opinions of medical authors.

2. The court should have sustained the objections made to the manner Dr. Nelson was examined as a witness. It was an indirect way of reading the opinions of medical authors to the jury. To ask questions by reading from books and inquiring of a witness if he agreed with the author, and when objections are made to repeat the same question to the jury from memory, is doing indirectly that which the law expressly forbids. Opinions of authors obtained in that way are as objectionable as when read to a jury from a book, and this court has decided that this cannot be done in a civil action. *Baldwin's Appeal from Probate*, 44 Conn., 40 ; 1 Greenl. Ev., 9th ed., § 440, note 3.

3. The court was clearly in error in charging the jury that the plaintiffs were entitled to recover for the expenses of Mrs. Tompkins's sickness. The expenses of her sickness were not recoverable in this suit, they being a right of action in the husband alone. This is elementary law. *Fuller* v. *Naugatuck R. R. Co.*, 21 Conn., 571. But it is sought to avoid the effect of that error by showing that it had no injurious effect. But nothing of the kind is shown. The jury being told that they should estimate as a part of the plaintiff's damages the expenses of her sickness, the presumption is they did as they were told to do. The data from which to estimate damages on that account were more definite than of any other element of damage in the case.

*A. Brandegee*, for the appellees.

1. It is claimed to be an error that the question asked Dr. Paddock was admitted. It was objected to as leading, as

not legitimate cross-examination " because it was not offered in chief," and " because it was a hypothetical question not based on proved or admitted facts." Three of these four objections are disposed of by the court, in finding that in the proper and ordinary " exercise of its discretion " it overruled the objection. The last objection is disposed of by the court finding it to be untrue.

2. It is objected that certain "technical medical questions" were asked of Dr. Nelson, a medical expert, by reading from a standard medical authority, in order that they might be more intelligible to the witness, and that, upon objection, both questions and answers were withdrawn, and verbally and from memory put to the witness in substantially the same language. . It is difficult to perceive how a " technical medical question " could be asked of a " medical expert " in any other than one of the two modes adopted. In *Baldwin's Appeal from Probate*, 44 Conn., 37, this court held that books could not be "read to the jury for the purpose of showing the facts set forth," as the evidence was not under oath. In *State* v. *Hoyt*, 46 Conn., 330, the verdict was set aside because counsel for defense was not allowed to read from Ray's Medical Jurisprudence, a standard medical authority.

3. It is objected finally that the court erred in its charge upon the question of damages. But the charge, with a slight and casual exception, follows the usual formula approved by this court in actions for compensation for personal injuries, and is almost in the precise words of that adopted in *Seger* v. *Barkhampsted*, 22 Conn., 298, and *Masters* v. *Warren*, 27 id., 300. It is contended that the expenses of Mrs. Tompkins's sickness should not have been mentioned. At the most it was an oversight of the learned judge at the close of a long and hotly contested trial. It is found that it was not requested by either party that no claim was made by either party on the trial relative to the question of expenses, that no evidence on that subject was introduced, and that no allusion was made to it in argument. It is manifest that the jury did not have that matter before them, and were neither confused, deceived or misled by it. The sole ground of the

action was the wife's injury. The whole trial was conducted on that issue and that alone. The husband was not mentioned during the trial, nor was he even a witness in the case. The casual expression of the court, "the expense of her sickness," is qualified and explained by the connecting words "and other circumstances tending to prove the direct damage she had sustained from that negligence." But after verdict this court will presume, for the purpose of upholding it, "that the statement in regard to the expenses of her cure may well enough be considered as descriptive of the extent of her injury, rather than as a distinct and substantive ground of damages." *Fuller and Wife* v. *Naugatuck R. R. Co.*, 21 Conn., 571. And further, if necessary, "this court will presume that the expenses were paid out of her separate property in order to sustain the verdict." Id., 573. It is well settled by a long course of authoritative and harmonious decisions in this state that a new trial, especially in jury cases, will not be granted for immaterial error in the charge of the judge, if this court can see that upon the whole case substantial justice has been done. *Johnson* v. *Blackman*, 11 Conn., 358; *Lester* v. *The State*, id., 419; *Laflin* v. *Pomeroy*, id., 447; *Selleck* v. *Sugar Hollow Turnpike Co.*, 13 id., 460; *Kelsey* v. *Hanmer*, 18 id., 320; *Cowles* v. *Coe*, 21 id., 236; *Derwort* v. *Loomer*, id., 252; *Brown* v. *Keach*, 24 id., 77; *Wooster* v. *Glover*, 37 id., 316; *Hull* v. *Bartlett*, 49 id., 64.

LOOMIS, J. This is a suit to recover damages for a personal injury to Mary Tompkins, wife of the plaintiff John Tompkins, caused by the negligence of the defendants' servant in the management of a horse and baggage-wagon while being used in the business of the defendants.

Upon the trial of the case to the jury the plaintiffs claimed that Mrs. Tompkins had been internally injured in the chest, and that the injury produced frequent and serious hemorrhages, and that before the accident she had been generally healthy and strong.

On the part of the defense one of the most prominent claims was, that she could not have been internally in-

jured as she claimed, because there were no visible external marks of injury on her person. To sustain this claim the defendants offered Dr. Paddock as a medical expert. On his cross-examination he was asked this question:—"In your opinion as a medical man, can or cannot the tissue of the lungs be broken by outside pressure, strong, violent and sudden, if at the time the lungs were inflated with air, so as to produce hemorrhage without extravasation or visible external cause?" To this question the counsel for the defense objected, on the ground that it was leading, and was not legitimate cross-examination of anything as to which the witness had been inquired of or had testified, and because the testimony should have been offered in chief, and also because it was a merely hypothetical question, not based on proved or admitted facts. The plaintiffs' counsel thereupon offered to make the witness his own. In the exercise of its discretion the court overruled the objection that the question was leading, and was not proper cross-examination, and that the testimony should have been offered in chief, and allowed it to be put, on the ground that it called (and the court found that it did) for an opinion upon facts admitted or claimed to have been proved in the case. The answer of the witness was in the affirmative.

This finding of the court would seem to remove the foundation of every objection made by the defendants' counsel. The only objection urged in the argument before this court was that no evidence had been actually offered to prove that the lungs of Mrs. Tompkins were at the precise moment of the injury inflated with air. This was undoubtedly true, for the formal introduction of any such evidence would have been not only absurd but practically impossible. The question objected to could not have been understood as referring to any special or artificial inflation of the lungs, but only to such inflation as would occur during the regular process of respiration. As matter of common knowledge it was proper to assume as a fact that the lungs must have been so inflated at intervals of a few seconds only, and it would follow from this that Mrs. Tompkins's lungs might have been inflated

at the precise moment of the collision.   The question having been answered in the affirmative tended directly to impair the defendants' claim that she could not possibly have been injured as she claimed in the absence of external marks of violence upon her person.

The other ruling as to the admission of evidence which the defendants complain of, is stated in the finding as follows :—The plaintiffs called in chief, partly as an expert and partly as one of the physicians who professionally attended, Mrs. Tompkins after her injury, Dr. Nelson of New London, and asked him certain technical medical questions, reading them from a standard medical authority in order to make the question clearly intelligible to the witness.   The defendants' counsel objected to that mode of inquiry.   The plaintiffs' counsel withdrew the questions and answers, and verbally and from memory put them in substantially the same language.   The counsel for the defendants objected, but the court overruled the objection.

It does not appear what the objectionable questions were other than that they were "medical and technical."   The book read from was a "standard medical authority."   The motive was to "make the question more clearly intelligible."   It is to be presumed that the question was relevant to the issue, inasmuch as the only objection mentioned was to the mode of inquiry.   As that mode was altered by the counsel for the plaintiffs in deference to the objection, we think the counsel for the defendants ought to have acquiesced.   But had the mode been adhered to, we see no well founded objection to it under the circumstances.   If a question is in itself proper in form and relevant to the issue, it is not of the slightest consequence how it was suggested to the mind of the interrogating counsel, and whether it was read from a book or drawn from the storehouse of memory, and whether it had reposed in the memory five minutes or five years would seem equally immaterial.

To require of counsel a learning in the technicalities of all the sciences, ample enough, without special preparation, to conduct intelligently a technical examination of an expert,

in such science, would not only practically deny his right to conduct an examination or cross-examination at all, but would virtually deny to a party the assistance of counsel in many scientific matters.

The remaining question for our consideration relates to the charge of the court to the jury on the subject of the damages which the plaintiffs were entitled to recover. After stating to the jury that the plaintiffs were entitled to recover just damages for the injuries which Mrs. Tompkins received, the court added:—"And in estimating these you are to consider her peril and danger, the nature and extent of her injuries, her physical and mental pain and suffering, the expenses of her sickness, the duration of her illness and disability, and any other circumstances tending to prove the direct loss and damage she has sustained or must sustain from that negligence."

The alleged error consisted in telling the jury that in estimating Mrs. Tompkins's damages they should consider the expenses attending her sickness.

Had she been unmarried and had she sued as a feme sole, the charge would have been entirely correct. The ordinary rule of damages for an injury of this kind was accurately stated, but by mere inadvertence the court failed to modify that rule so as to adapt it to the case of a suit by a married woman for her personal injury. In such cases it is clear that the right of action, so far as the expenses are concerned, is in the husband alone. It was his duty to pay such expenses and the presumption is he did so. It was error therefore to include them as part of her damages. *Fuller and Wife* v. *Naugatuck Railroad Co.*, 21 Conn., 557. For this error a new trial must be granted, unless we can say that it did not prejudice the defendants. If the instructions were heeded and the jury included these expenses it was a material error, for the defendants would still be liable to an action in favor of the husband alone for the same items.

But the counsel for the plaintiffs cites sundry cases showing how astute courts have often been and ought to be in sustaining verdicts regularly obtained, and to this end he

invokes the benefit of certain principles laid down in those cases.  While confessing a hesitation and reluctance to disturb the verdict in this case, we think the principles involved in behalf of the plaintiffs are not fully applicable.  In many cases a presumption that the jury included no improper elements of damage will save a verdict, but not so here, because the judge instructed the jury that they ought to consider the expenses of Mrs. Tompkins as part of her just damages, and this became a new starting point for a presumption against the verdict, that is, it is to be presumed here that the jury did as they were told to do.

But we must not overlook the additional finding of the court, that " no claim was made by either party on the trial relative to the question of the expenses of Mrs. Tompkins's sickness, and no evidence on that subject was introduced, nor was the court requested by counsel for either party to instruct the jury on that subject as an element of damage." While the absence of any request to charge might justify the court in omitting to charge at all on the subject, yet it could not possibly justify or excuse a positive charge that was erroneous.

The absence of any request however, in connection with the omission to offer any evidence on the subject, is worthy of some consideration upon the question whether the jury were misled.  To suppose that an ordinary jury, after having been instructed to consider expenses as an element of damage, would disregard such advice, would be to suppose them learned enough in the law or discriminating enough to observe the mistake or inadvertence of the judge and correct it.  And the fact that no evidence was introduced to show the fact and amount of the expenses is hardly sufficient to justify the presumption that they failed to consider what the judge told them they ought to, especially as he stated this as one element of damage in immediate connection with other elements of damage in respect to which there was also no evidence.  The jury hearing evidence in detail as to the nature and extent of the injury, the length of time Mrs. Tompkins was wholly or partially disabled and the time dur-

ing which she was under the care of her physician, would naturally apply their knowledge and experience to the facts and make some estimate of the probable expenses.

The counsel for the plaintiffs also invokes the benefit of two principles or suggestions stated in the opinion of the court in *Fuller and Wife* v. *Naugatuck Railroad Co.*, *supra*, which like this was a suit for a personal injury to the wife, in which the court said, alluding to the averment in the declaration as to the plaintiffs' expenses in endeavoring to effect a cure, that "the ground of the action was the wife's personal injury alone; otherwise she could not have been made a party at all; and we think the statement in regard to the expenses of her cure may well enough be considered as descriptive of the extent of her injury, rather than as a distinct and substantive ground of damages."

At first blush this suggestion seems to furnish ground to sustain the verdict here, but there is an important distinction to be observed. The question in the case cited came before the court on a motion in arrest of judgment, and of course the only question was whether the declaration was sufficient to hold the verdict. It was merely held that the allegation as to the expenses of the wife was wholly unnecessary but did no harm, that in the absence of anything to the contrary there was a presumption that the trial court would so regard it, and would confine the evidence to the gist of the action, that is, to a breach of the contract alleged to carry the wife safely, and therefore there could be no presumption that the expenses of the wife were included. In the case at bar there is no question as to the sufficiency of the complaint, but it is merely a question as to the instructions given by the court to the jury. In the case cited it was impliedly conceded that the declaration could not be sustained if it must be construed as containing an allegation that the expenses were claimed as a distinct ground of damage. But in the case at bar the court in effect told the jury that the expenses of Mrs. Tompkins's sickness were a substantive ground for damage. It seems to us therefore that there is a wide distinction between the two cases.

Another suggestion derived from the same case is also urged as applicable to the question under consideration, namely, "that the court will presume that the expenses were paid out of the wife's separate estate in order to sustain the verdict." The action in the case cited was founded on the contract obligation of the defendants as common carriers to carry the wife safely as a passenger from Waterbury to Plymouth, and the declaration alleged a promise to the wife upon a consideration paid by her, and the suggestion referred to was in answer to the argument made in support of the motion in arrest, that a married woman could not sue on a contract made during coverture. It is obvious therefore that the principle is not applicable to the question at bar, whether the charge to the jury that they might include the wife's expenses as part of her damages was correct and not prejudicial to the defendants. In this case there was no evidence and no claim that the wife paid any of the expenses of her sickness herself, or that she had any separate property from which payment might be made, and we cannot see any foundation upon which to raise the presumption upon which the plaintiffs rely.

There was error in the ruling complained of and a new trial is ordered.

In this opinion the other judges concurred.