## EAGLESTON v. UNITED STATES.
### No. 11545.

United States Court of Appeals
Ninth Circuit.

Jan. 7, 1949.

Rehearing Denied Feb. 4, 1949.

Writ of Certiorari Denied April 18, 1949.

See 69 S.Ct. 882.

ment[1] charging appellant with assault upon one Rowley with a dangerous weapon in violation of Section 4778 Compiled Laws of Alaska. Motions for a new trial and arrest of judgment were denied and a sentence of imprisonment imposed.

This case grew out of a short argument between appellant and Rowley over a business matter. The argument was followed by a brief fistic encounter between them in which Rowley was knocked or pushed into a wood pile. It is the theory of the prosecution that while Rowley was still on the ground and trying to rise, appellant picked up a garden rake and struck him on the head with this implement, the blow fracturing his skull. This alleged assault with the rake is the basis of the charge in the indictment.

Miles and Foote were present at the time of the alleged assault. Their testimony at the trial differs in detail as to exactly what was said and done by appellant and Rowley, but the testimony of all four men, together with that of one Strutz, who was nearby, tends to establish as true the following facts:

Rowley and Miles (the latter then an employee of appellant) called upon appellant at his house to discuss a prospective purchase by Rowley of an oil tank owned by appellant. Upon entering the house they knocked at appellant's bedroom door, after which a conversation ensued, largely between Miles and appellant, concerning whether the price for the tank was $150 or $250. They were unable to agree and Miles and Rowley then left the house, Miles preceding Rowley by several feet, appellant following Rowley. The three men went toward and through a door lead-

George B. Grigsby, of Anchorage, Alaska, and George T. Davis, Harold C. Faulkner and A. J. Zirpoli, all of San Francisco, Cal. (A. A. Spiegel, Sol A. Abrams and Anthony E. O'Brien, all of San Francisco, Cal., of counsel), for appellant.

Raymond E. Plummer, U. S. Atty., of Anchorage, Alaska, for appellee.

Before MATHEWS, HEALY and BONE, Circuit Judges.

BONE, Circuit Judge.

Appeal from a judgment of conviction upon the verdict of a jury under an indict-

---

[1] The indictment, eliminating non-essential parts reads as follows:

"Sec. 4778 C.L.A. 1933
Indictment

"Z. E. Eagleston is accused by the Grand Jury for the Territory of Alaska, Division No. Three, by this indictment of the crime of assault with a dangerous weapon, committed as follows:

"The said Z. E. Eagleston, on the 30th day of July, 1946, at Anchorage, in the Division and Territory aforesaid, and within the jurisdiction of this Court, then and there being, and being then and there armed with a dangerous weapon, to wit, a long-handled implement, a more exact description of said long-handled implement being to the Grand Jury unknown and therefore not stated, did then and there wilfully, feloniously and unlawfully make an assault upon another, to wit, Frank Rowley, with said long-handled implement by then and there striking, beating, and wounding the head of the said Frank Rowley with the said long-handled implement, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

ing to appellant's back yard, and entered this yard.

As Rowley and appellant emerged from the door, appellant stated to Rowley that his price for the tank was $250 and Rowley could take it or leave it; that Rowley could not argue about it in his (appellant's) house or call him a liar, whereupon Rowley said, "you are." Appellant then demanded that Rowley remove his glasses, Rowley complied, and both men put up their hands in a "sparring" attitude. Appellant struck and/or pushed Rowley one or more times which caused Rowley to stagger back and fall on his left side into or against a wood pile.[2] While lying on his left side Rowley appeared to be using his elbows in an attempt to get to his feet, and at this time appellant seized a garden rake and struck Rowley on the head with this rake.[3]

Foote saw (and described) the events immediately prior and subsequent to appellant's striking Rowley with the rake, but the actions of these two men were out of his line of vision for a very brief period at the time Rowley was trying to get up after being hit or pushed by appellant, and Foote did not see the striking with the rake. He did not hear all of the conversation between the principals, but did hear Rowley say "you are" when appellant stated that Rowley could not call him a liar. Miles, standing close by, did not hear Rowley make such a remark.

After the blow with the rake Foote took it from the hands of appellant and set it to one side, saying to appellant, "you can't use something like that. You don't need it."

Aside from the noted colloquy between Rowley and appellant, Rowley made no threats or gestures toward appellant.

Strutz was about 35 or 45 feet away from that point but he saw the group of four men in appellant's yard; he saw appellant grab a long handled instrument—it "seemed" like a rake at the time, and then strike in the direction of the position where he had previously believed Rowley to be; that one man fell which removed the fallen man from his line of vision, but appellant was striking with the rake in the direction of where the fallen man had been before he fell. Strutz then approached the group of men and saw Rowley lying on his left side on the ground with a wound in his head, his foot was "kicking," and he appeared to be "in a bad way." Strutz stated to "the tall, slim fellow" (appellant) "you struck him hard," to which appellant replied, "did you see me strike him?" to which Strutz replied, "I certainly did." Later Strutz was unable to determine whether the long handled instrument he saw was a rake or a shovel—this after he was called to the police station to view various instruments picked up at the scene by officers.

We summarize the testimony of appellant and Rowley dealing with the events at that time.

Rowley testified that after the discussion in the house regarding the price of the tank, and while he was going out of the door of appellant's house, appellant told him to take off his glasses which he did, after which appellant hit him once with his fist. He did not remember much after that. He has no vision in his right eye, but his left eye is fairly good. He "went backward" and remembered that he tried to get up. Appellant reached over by the building and picked up an implement and raised it over his (appellant's)

---

[2] The yard also contained some trash and various implements among which were a garden rake, a shovel or shovels and other items. Blood was later found on the shovel; also some strands of hair.

[3] Rowley sustained a comminuted, depressed skull fracture. The crack in the skull extended from the frontal to the posterior area of the skull, brain tissue and blood were oozing from the wound, and bone fragments had been shoved down into the brain tissue. These bone fragments along with some brain tissue were removed by the surgeon (a witness in the case) when he operated on Row-

ley shortly after the injury. This witness testified that the wound he observed on top of Rowley's head prior to the operation was crescent shaped and about three and a quarter inches long, appearing slightly to the right side of the top of the head, and this wound could have been caused by the tine of a rake if the blow from the rake had been delivered with sufficient force. The bone fragments forced down into the brain tissue were located under and removed from the area where this crescent shaped wound appeared on the scalp.

head and then everything went black and then he felt a pain in his head after which a woman put wet towels on his head and he was taken to the hospital by two policemen. His glasses were off and in his physical condition he did not know what instrument appellant had in his hand.

The substance of appellant's testimony is that he regarded "the argument" with Rowley as a dispute over the price of the tank; at the conclusion of this argument he stated to Rowley, "you can't call me a liar in my own house"; Rowley stepped outside the door and said "you are a liar"; appellant said, "take off your glasses"; which Rowley did; they started to spar around; Rowley hit at appellant three or four times; then Rowley hit appellant and appellant hit Rowley and gave him a shove and Rowley "got on the ground," started to get up, and appellant stepped back and grabbed a rake and lifted it up; appellant grabbed this rake because he was "winded" —he wanted Rowley to stop—he grabbed the rake to scare Rowley and get him to stop—Rowley started to get up, part way, then fell back down and laid there—appellant never struck him with any implement or any weapon at all; Strutz came running up after Rowley was laying on the ground and appellant had the rake in his hand— Foote said, "you don't need that. The man's hurt," and Strutz said, "get a doctor yourself" after appellant said, "get a doctor."

Two doctors testified for appellant. They were of the opinion that the skull fracture could have been caused by a fall in which Rowley's head struck a shovel, or a rake, also that the fracture could have been caused by a blow from a rake. Neither of these doctors had attended Rowley in a professional capacity after the injury, but one of them, Dr. Davis, said that he had called at the hospital and looked at Rowley's head wound prior to surgery and while doing so made a mental measurement of its extent. (See footnote 3.) X-ray pictures were used to illustrate their testimony.

The foregoing presents a general picture of the evidence as to what actually happened at the time of the alleged assault, and on this evidence, together with testimony of medical experts and that of witnesses relative to the reputation of Miles and a previous conviction of appellant, the case went to the jury.[4]

Under the evidence admitted for its consideration, the jury faced the necessity of determining the following controlling issues: (1) did appellant seize a rake and use it as a weapon with which to strike Rowley on the head at a time when Rowley was lying on the ground after a brief fistic encounter with appellant, (2) if appellant so used a rake, was such use an assault with "a dangerous weapon," as charged in the indictment, (3) did the skull fracture suffered by Rowley result from a blow from a rake wielded by appellant, or was the fracture the result of Rowley's head accidentally hitting a shovel or some other object when he was knocked or pushed by appellant into or against a wood pile, (4) if appellant struck Rowley on the head with a rake did he strike this blow wilfully,

---

4 The defense did not demand a bill of particulars prior to trial but during the trial asked the court to require the prosecution to then inform defendant "what dangerous weapon" it would claim was used by appellant to accomplish the assault charged in the indictment. The court ordered this information to be disclosed if the district attorney then possessed it. After argument over the timeliness of the demand under court rules, the prosecution announced that it would proceed upon the theory that the assault weapon was a long-handled garden rake. A formal Bill of Particulars was prepared and filed which reiterated this contention and set forth that the blow by the rake resulted in a crescent shaped depression of approximately 3¼ inches to 3½ inches on the top of Rowley's head a little to the right of the center and caused a crack in Rowley's skull which extended from the bridge of the nose to approximately the base of the skull. It appears that a shovel and a rake taken from the scene had been sent to Washington, D. C. for examination by the F.B.I. there and these were not returned and made available to the prosecution until almost trial time, at which time the prosecution made certain experiments with them. The indictment had been prepared about a month previously.

feloniously and unlawfully, as charged in the indictment?

By its verdict the jury resolved all of these issues against appellant, and we think that the evidence fully sustains the verdict beyond a reasonable doubt.

Two general exceptions were taken to the instructions. One dealt with a refusal to instruct (in language suggested by appellant) concerning a previous conviction of appellant. We see nothing objectionable in the language employed by the court in its instruction on this matter. The other related to language in sub-paragraphs 4-D. and 4-E of the instructions.

A general criticism of 4-D[5] is that it assumes on its face that appellant was the aggressor. The specific reason here assigned is that in giving this instruction the court *completely removed the issue of self-defense*. It is argued that there is sharp conflict as to who struck the first blow with a fist; that the evidence shows that Rowley struck the first blow in the altercation and that self-defense is a valid defense to a charge of assault, as is the issue of self-defense in a prosecution for assault with a dangerous weapon. It is strongly urged that "the positive testimony of appellant clearly injected the theory of self-defense into this case."

We do not agree with this contention. As pointed out herein, the evidence points directly and conclusively to the fact that the controversy between appellant and Rowley had passed beyond the stage of a mere boxing encounter at the time of the assault charged in the indictment. Appellant's own testimony clearly indicates this to be true and this testimony went to the very heart of the problem facing the jury.

He contends that when Rowley was knocked or pushed down his head came into forcible contact with a shovel or some other object which was the direct and only cause of the skull fracture; that a shovel near or under Rowley's head which had blood on it proves this to be true. Appellant's testimony supported this theory, and on this appeal he alleges in his brief that: "There is an abundance of evidence substantiating *appellant's position* that Rowley's injuries resulted from a fall into the woodpile while he was sparring with appellant." (Emphasis supplied.)

The self-defense issue is raised on this appeal for the first time. This defense was not claimed or urged at the trial and no request was made for an instruction presenting such an issue. The real defense to the specific charge here laid is presented in appellant's testimony by his blunt denial that he struck Rowley with the rake. This is a far cry from a claim that he used the rake in self-defense. Therefore we do not agree that such an issue was tendered or before the jury. Appellant is assigning as error the failure of the court to do what appellant did not request it to do. See Fredrick v. United States, 9 Cir., 163 F.2d 536, 549, note 18; Boyd v. United States 271 U.S. 104, 46 S.Ct. 442, 70 L.Ed. 857; Wong Tai v. United States, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545; United States v. Bushwick Mills, 2 Cir., 165 F.2d 198. Despite this omission we have considered the contention and a consideration of the evidence convinces us that absence of an instruction on self-defense was not prejudicial.

Under the laws of Alaska[6] (simple) assault is an "included offense" where

---

5 Instruction 4-D.

"Even if you should believe that Rowley called the defendant a liar, in words or substance, on the day of and before the alleged commission of the crime charged in the indictment, the use of such words by Rowley and his application of them to the defendant would not justify an assault by the defendant upon Rowley, whether the defendant was or was not then armed with a dangerous weapon.

"It is no defense to the crime charged in the indictment, or to the included crime of assault, that Rowley may have voluntarily entered into a fight with the defendant, each attempting to hit and injure the other with his fists. The crime charged against the defendant in the indictment, and the included crime of assault, are offenses against the United States."

6 It is argued that the jury was confused by instructions relating to the "essential elements" necessary for conviction of the offense charged. Appellant points out that Section 4778, C.L.A., provides that "Whoever, being armed with

the greater and more serious offense (as here) is charged. The court did instruct (and we think not only properly so, but also to appellant's advantage) that under the law the jury might find that appellant was guilty only of the lesser (and included) offense of "assault" if it found beyond a reasonable doubt that he had committed only this minor and included offense. It was instructed that it could not find appellant guilty of both forms of assault. This was not error.

The record reveals that the whole sweep of the evidence and the theory of the prosecution (which was met at trial by the defense tendered in appellant's testimony) was confined to the issue of whether appellant was guilty of the offense of being armed with a rake and beating Rowley on the head with it.

We are fully persuaded that on the facts shown in the evidence this case was lifted out of the ambit of a mere sparring match in which one of the actors was knocked or pushed to the ground. This controlling and fundamental issue was recognized by the court and correctly submitted to the jury, and that issue was whether the act of appellant in later grabbing a rake and beating Rowley on the head with it while Rowley was on the ground abruptly transformed a preliminary fistic encounter into an assault with a dangerous weapon. If the rake when so wielded by appellant could, and actually did produce the extensive skull fracture suffered by Rowley, and appellant intended to assault Rowley with it at the time, it requires no argument to establish that such use of the rake was an assault with "a dangerous weapon."

On this particular point the court instructed the jury that it could not find appellant guilty of the charge in the indictment unless it was convinced beyond a reasonable doubt that appellant was not only armed with a dangerous weapon but *intended* to assault Rowley with this weapon.

Both sides agree that in the absence of statute, mere words, no matter how abusive, insulting, vexatious or threatening they may be, will not justify an assault or battery. We think this principle applies to the events leading up to the assault alleged in the indictment and shown by the evidence.

Appellant excepted to Instruction 4-E and particularly that part which reads: "* * * circumstantial evidence must be of such nature as reasonably to lead to the inference of the defendant's guilt and be *more* consistent with guilt than with innocence." (Emphasis supplied.) Rule 30, Federal Rules of Criminal Procedure, 18 U.S.C.A., requires the objector to state distinctly "the matter to which he objects and the grounds of his objection." The specific ground assigned was that the part above quoted "should have been read that the circumstantial evidence be consistent with guilt and inconsistent with innocence." After this objection was voiced in this form counsel for appellant stated to the court, "that's all." Since counsel did not "state distinctly," or at all, what other, if any, part of the rest of 4-E he objected to, the court was justified in concluding (under Rule 30) that counsel was not assailing the remainder of the instruction.

In the language it employed the court emphasized that the inference of guilt must be *more consistent* with guilt than with innocence before the jury could find the defendant guilty. In its contextual setting, the language criticized was even more favorable to appellant than the lan-

---

a dangerous weapon, shall assault another *with such weapon*, shall be punished * * *." (Emphasis supplied.) Section 4779, C.L.A. (simple assault) provides—"whoever, *not being armed with a dangerous weapon*, unlawfully assaults or threatens another in a menacing manner, or unlawfully strikes or wounds another, shall be fined * * *." (Emphasis supplied.) The specific criticism is that if appellant had slapped Rowley's face while he had a knife in his pocket he would not even commit the crime of simple assault. We are urged to "clarify" this statutory uncertainty in our opinion and it is suggested that we would not be "legislating" if we did so. It is sufficient to say that in the posture of this case we think the contention lacks merit. We see nothing to indicate that the jury was "confused."

guage he suggested. There is no merit in this contention.

We have read this record with care and we are persuaded that the trial judge conducted this case with a scrupulous regard for the legitimate rights of appellant. Repeatedly throughout the instructions the judge admonished the jury that it could not find appellant guilty of the charge of the indictment unless the evidence produced a settled conviction that the Government had established his guilt of that offense beyond a reasonable doubt, and that the duty rested upon the Government to prove every material element of the charge beyond a reasonable doubt. The jury was told that the entire case could not be covered in any one instruction and all were to be considered together. To these admonitions was added the warning that the judge had made no comment on the facts and expressed no opinion in regard thereto, but if the jury thought he had done so, it was its duty to wholly disregard that opinion because the responsibility for determining the facts rested exclusively with the jury. Viewing the instructions as a whole (as the court admonished the jury to do) we think that they dispassionately and adequately covered all essential questions in a form which sufficiently stated the law of the case and preserved all of the essential elements of a fair trial.

For the purpose of showing that Rowley's injury resulted from the use of a dangerous weapon, the prosecution introduced the testimony of the surgeon who operated on him after the injury. Four photographs of the skull injury were shown to the jury and the medical expert who operated on Rowley testified that they showed the extent of the injury at the time of the operation. Three of these pictures were later withdrawn and only one (Exhibit 8), which shows the incision after the wound was sewed up, remained in evidence for the jury. It is contended here that the photographs do not relate to the medical testimony in the case.

In objecting to these photographs at trial, counsel for appellant urged that they might be material to show the direct results of any blow that might have been struck, but not to excite prejudice and horror in the minds of jurors. The court stated that they were admitted for the purpose of showing in part the condition caused by the alleged wound, from whatever cause; that the pictures were not to be held as a reflection upon the defendant unless it was convinced beyond a reasonable doubt that he was guilty of the crime charged; that the jury was not to be influenced by them nor hold a prejudice against the defendant on their account or go beyond the evidence to believe that defendant might be guilty of the crime. This admonition was accompanied by the further direction that the jury should not make up its mind until all of the evidence had been submitted.

The operating surgeon described the head wound with great particularity. If (as here) the photographs were a true representation of the condition of Rowley's head shortly after the infliction of the wound, we think that they were competent evidence of anything concerning which it was competent for a witness to give verbal testimony. In this case they were used to indicate the nature and extent of the wound. We cannot say, as a matter of law, that any prejudicial effect which might be inferred from their use, outweighs their probative value. See comment in State v. Nelson, 162 Or. 430, 92 P.2d 182, 191 and State v. Cunningham, 173 Or. 25, 144 P.2d 303, 311. We hold that the court did not abuse its discretion in permitting the jury to see these pictures and in permitting Exhibit 8 to remain in evidence.

A motion for a new trial was denied and this is assigned as error. The granting of a new trial is a matter which rests in the sound discretion of the trial court. Repeated rulings of this court have so declared and the contention is without merit.

Other contentions are that appellant was prejudiced by failure of the prosecution to disclose prior to trial, the precise theory as to the instrument or implement used by appellant in the alleged assault (see footnote 4) and that the indictment does not state facts sufficient to constitute a crime.

■ Appellant had competent counsel. They were in close contact with his case and represented him from and after his preliminary hearing in which they participated. It seems clear that they were in as full possession of the facts concerning the rake and a shovel mentioned at the preliminary hearing as was the prosecution, a fact which rationally explains the failure to make a pre-trial demand for a Bill of Particulars as to exactly what "dangerous weapon" the prosecution would contend was the long handled implement used in the alleged assault and referred to in the indictment. Furthermore, when, for the first time, demand was made at trial as to what implement the prosecution would claim was used by appellant, the information was given orally and by a formal Bill of Particulars. We think the information thus furnished was in sufficient detail to enable appellant to make as full and complete a defense as the facts of the case would permit, and was sufficient to prevent him from being prosecuted a second time for the first offense. The facts developed in the evidence were well within the terms of the indictment. See Rule 7(c), R.Crim. P., and United States v. Bickford, 9 Cir., 168 F.2d 26, and cases cited.

We agree with the trial judge that the allegations of the instant indictment would enable a defendant to know precisely that he was charged with assault by means of "a long-handled implement," and that if there were some additional things that he thought he ought to know he could secure them by a bill of particulars. In response to his demand at trial for additional information he was advised that the prosecution would claim that the implement mentioned was a garden rake. That information, given as soon as requested, satisfied the requirements of the law.

■ The Sixth Amendment requires that an accused shall enjoy the right "to be informed of the nature and cause of the accusation" and appellant contends that the instant indictment fails to meet this requirement. We cannot follow this argument for the reason that nothing more could have been set out in the indictment which might have been helpful to the defense, other than to identify the "long-handled implement" as a garden rake. In our view the lack of this descriptive information, later supplied on demand, did not go to the validity of the indictment since this additional information could have been, and was, furnished as soon as requested. It cannot be said that the indictment in this case was ambiguous or misinformed or misled appellant by omitting an essential element of the offense sought to be charged.

This is not a case where counsel for appellant were literally "working in the dark." The record discloses that a preliminary hearing (referred to above) was held on August 2, 1946 (three months before trial) in the United States Commissioner's Court at which time and place trial counsel for appellant appeared and examined witnesses. Foote and Strutz were witnesses on that occasion and Strutz was questioned as to whether the implement claimed to have been used by appellant was a shovel or a rake. It is abundantly plain that at least from the time of this preliminary hearing, appellant knew that he was accused of assaulting Rowley with either a shovel or a rake.

■ Another contention is that the instant indictment charges in the language of the statute and is therefore insufficient. The indictment charges appellant with the commission of a specific act of violence the doing of which constitutes a crime under Alaska law. In this respect it states facts sufficient to constitute the crime charged, for the words of the statute contain all of the essential elements of the offense. Whether a rake used as it was in this case was a "dangerous weapon" was a matter of proof, and this issue of fact was one to be decided by the jury.

■ A final contention is that the indictment was defective because the district attorney withheld evidence from the Grand Jury as to the exact nature of the alleged "dangerous weapon." It is claimed that this information was known to the district attorney and could have been easily ascertained by the Grand Jury at the time the indictment was returned, all of which deprived appellant of the opportunity to prepare his defense. Foote was before the

Grand Jury and it had the benefit of his testimony before returning the indictment. The record as a whole does not support this charge and we think it is void of merit. The district attorney was not wholly satisfied regarding the rake until he completed an experiment after the rake was returned to him a short time before trial and after its examination by the F.B.I. The allegations of the indictment clearly appear to have been based solely upon the necessities of the occasion when it returned the indictment. We cannot see prejudice to appellant in this fact.

The record convinces us that appellant received a fair trial and the judgment and sentence are affirmed.