### EAGLESTON v. ROWLEY.
#### No. 11807.

United States Court of Appeals
Ninth Circuit.

Jan. 7, 1949.

George B. Grigsby, of Anchorage, Alaska, and A. J. Lirpoll and George T. Davis, both of San Francisco, Cal. (Sol A. Abrams and Anthony E. O'Brien, both of San Francisco, Cal., of counsel), for appellant.

Hellenthal & Hellenthal, of Anchorage-Juneau, Alaska, Simon Hellenthal, of Juneau, Alaska, and John S. Hellenthal, of Anchorage, Alaska, for appellee.

Before MATHEWS, HEALY and BONE, Circuit Judges.

BONE, Circuit Judge.

This is an appeal from a judgment awarding the sum of $37,000 to appellee for personal injuries sustained as a result of assault by appellant upon him with a dangerous weapon.[1]

The parties agreed that this action should

---

[1] See our opinion in Eagleston v. United States of America, 172 F.2d 194, in which details of the assault are set forth. Upon appeal to this court the conviction of Eagleston was affirmed. The same judge presided in both cases.

be tried without a jury; that all of the evidence and testimony in the criminal case referred to in Footnote 1 should be considered as in evidence in the trial, and that the parties might introduce additional evidence bearing upon the question of damages to Rowley.

Appellant presents three contentions which cover the essential issues on his appeal. In summary, they are that the trial court committed prejudicial error (1) in allowing excerpts from a medical text book to be read into evidence as part of appellee's case in chief; in allowing pages from said text book to become part of the record herein, and in considering and relying upon the content of said text book in arriving at the damages awarded appellee, (2) in allowing a life insurance agent to give his opinion as to appellee's ability to obtain life insurance, because this agent was not qualified to give such testimony and it was therefore incompetent, (3) the evidence does not justify the excessive award allowed.

We consider these contentions in the order stated.

Dr. Romig, a surgeon who testified, had operated upon appellee shortly after the injuries were inflicted upon him, and continued to treat appellee up to time of trial. He was asked to state his prognosis of appellee's case and in so doing to indicate whether this prognosis, in addition to being based upon his own diagnosis, was based upon any particular medical authority. He answered that "in some measure" his prognosis was based on his study of "Wechsler's Textbook of Neurology," 1944 edition, and also upon the study of "Attorney's Textbook of Medicine," by Gray, 1940 edition,[2] this in addition to his experience as a surgeon and physician.

Appellee's counsel offered in evidence certain excerpts to be removed from the Gray and Wechsler texts; these were objected to, *as exhibits,* but appellant's counsel

stated to the court that the defense had "no objection to the Court consulting any work that he desires * * * researches on this case. *As exhibits* we object to them." (Emphasis supplied.)

Appellee's counsel then withdrew his offer of these extracts, *as exhibits;* the judge stated that he understood that counsel for appellant had no objection to the court considering these texts, to which statement Mr. Grigsby for appellant replied, "Nor any other texts."

During his testimony Dr. Romig read an excerpt from page 538 of the Wechsler text which dealt with prognosis in brain injuries resulting from skull fractures. Relating this incident to the first and third of appellant's contentions above noted, it is urged that Dr. Romig prejudicially "summarized" some of Wechsler's observations on brain injuries.

While Dr. Romig testified at length as an expert, setting forth in great detail his professional opinion concerning the nature, extent, probable duration and ultimate results to be expected from appellee's brain injury, it appears to be appellant's theory that Dr. Romig's testimony must be rejected in toto by us as being void of any probative weight or value because Romig referred to and cited opinions expressed by certain text book writers concerning such injuries. We cannot agree with this contention. An examination of his testimony indicates to us that Dr. Romig was using some of Wechsler's language to express his own professional opinion and to amplify his own conclusions.

Appellant points up his argument by quoting that portion of Finding No. 4 which reads as follows: " * * * that in the fixing of said amount of Thirty-seven Thousand Dollars, pages 534 to 540, inclusive, sub-entitled 'Fracture of the Skull,' of 'A Textbook of Clinical Neurology, with an

---

[2] In his testimony Dr. Romig stated that he had been acquainted with Wechsler for many years (referring to the text); that he became acquainted with the Gray text at "a late date," and this latter volume came from the chambers of the District Judge where, as property of the United States, it was marked for use of the judge.

introduction of the history of Neurology,' by Israel S. Wechsler, M. D., Fifth Edition, Revised, 1944, W. B. Saunders Company, *were considered."* (Emphasis supplied.)

Finding No. 3 found that appellee had been damaged in the sum of $37,000. It is argued that this finding and the above quoted language in Finding No. 4 constitute prejudicial error, which infirmity becomes apparent when these findings are measured against the evidence. The specific indictment laid by appellant is that Dr. Romig was not only allowed to read from a medical text "into the record," but the court also allowed the actual introduction of pages of that text *into evidence,* and then *relied heavily thereon* in making its findings, conclusions and judgment.[3]

■ We do not agree that these claims of error are sustained by the record. The most that can be deduced from the record is that the court took appellant's counsel at his word and "considered" the Wechsler text for whatever it may have been worth, an action virtually invited by appellant. It is certain that the "consideration" referred to by the court was with the full consent of appellant. The mere recital of the court that it had availed itself of this invitation lends no substance or reality to the charge that the court "relied heavily" on the Wechsler text. This conclusion must necessarily rest upon a pure assumption unsupported by any proven fact. Judges frequently "consider" matters suggested to them as being pertinent, but such consideration may fail to persuade a judge to any particular view or materially influence his judgment. It is for the judge, not counsel, to indicate what influenced him.

■ The entire body of medical testimony in this case also compels a conclusion which repels appellant's contentions. Three other physicians and surgeons were appointed to examine appellee and they testified concerning his injuries. It was from all of the medical testimony that the court arrived at its conclusion as to the extent of appellee's injuries. We are of the view that even if the testimony of Dr. Romig was excluded, there would still remain in the case sufficient medical evidence to persuade the court that appellee had suffered a frightful brain and head injury.

The evidence clearly establishes that as a result of the criminal assault upon appellee by appellant, the top of appellee's skull had been crushed, small fragments of bone had been forced down into the brain tissue to a depth of one and one-quarter inches below the outer table of the skull. The fracture itself extended from above the nose, across the top of the skull, and down to the occipital area. The operating surgeon was compelled to remove about two-thirds of an ounce of destroyed brain tissue.

■ It would serve no useful purpose to recite and analyze the extensive medical testimony. It is sufficient to say that it leaves us with the fixed conviction that appellee, a man of 41 years of age, had suffered a brain injury of so serious a character as to make his future present a cheerless and depressing picture. Viewed in its most hopeful light, the physical deterioration resulting from the brain injury proclaims the modesty of the award in this case when it is measured off against appellee's health and earning power prior to the injury.

The remaining major contention relates to the testimony of a life insurance agent who was permitted to express his opinion as to appellee's ability to obtain life insurance. The defense objected on the ground that the agent did not qualify as an "expert" to pass upon such a subject; also that such testimony was immaterial.

The specific objection voiced on this appeal is that "undoubtedly the court relied on this testimony in making his decision *as he specifically refers to the life insurance data in his findings."* (Emphasis supplied.) This is a reference to a finding in which the

---

3 After approval and settlement of the Bill of Exceptions, counsel for appellee caused the clerk of the district court to prepare, and the district judge to certify as correct, a copy of pages 534 to 540, inclusive, of the Wechsler textbook. The certificate of the judge indicates that he had "considered" these quotations from Wechsler and that this copied text matter was the material referred to in Finding of Fact No. 4.

court stated that in fixing the award it had "considered" certain insurance data, (introduced in connection with the agent's testimony) this data being identified as: "'New York Life Insurance Company, Premium Rates and Policy Values,' including 'Miscellaneous Tables' the 'American Experience Table of Mortality,' and tables of 'Life Annuities.'"

■■ It thus clearly appears that it was the mentioned "data" that received "consideration"—not the "opinion" of the agent. This data is in common use in the insurance field and its "consideration" by the court is not challenged on this appeal. Though it be conceded that an "opinion" of an insurance agent as to whether appellee could secure life insurance would be "immaterial," a consideration of the record persuades us that the admission of this opinion was at most an error of a harmless character which did not so prejudice appellant's case as to justify reversal of the judgment. It is not to be assumed that a capable judge would not discard irrelevancies in the evidence when called upon to make a serious decision.

In summary, other findings were that appellant had violently, wrongly, maliciously and deliberately assaulted appellee without provocation, and beat, wounded and injured him by striking him one or more blows on the head with a garden rake thereby producing a depressed compound fracture of the skull, laceration and destruction of appellee's brain. That appellee had suffered great bodily pain and mental suffering and had been totally disabled from date of his injury until trial; that appellee will be disabled by reason of his injury for many months to come and unable to perform any work or services, and will suffer pain, discomfort and mental suffering for many months to come. Also that appellee had incurred hospital bills in the sum of $744.25 and bills for physician's services in the sum of $750.

These findings are amply supported by the evidence, as is the finding that appellee had been damaged in the sum of $37,000. From the whole record we are satisfied that the case was fairly tried and that the judgment should be affirmed.