ALEX KAPLAN *v.* MASHKIN FREIGHT LINES, INC., ET AL.

DALY, C. J., BALDWIN, KING, MURPHY and MELLITZ, Js.

Argued February 4—decided April 15, 1959

*Adrian W. Maher,* with whom, on the brief, was *James J. Maher,* for the appellants (defendants).

*David Goldstein,* with whom were *John F. Lyons, Arnold J. Bai* and, on the brief, *Robert Fain,* for the appellee (plaintiff).

BALDWIN, J.  The defendants in this action for negligence have appealed from a judgment entered upon a jury's verdict for the plaintiff.  They assign error in the denial of their motion to set the verdict

aside, in rulings concerning the use of medical treatises in the direct and cross examination of expert medical witnesses and the argument to the jury, and in the finding. The defendants admitted liability and the case was tried on the issue of damages only.

A summary of the finding, with certain corrections, follows: The plaintiff, who at the time of the accident was fifty-nine years old, claimed to have proved that on July 11, 1953, the defendants negligently caused his truck, which he was driving, to be overturned. His head struck the concrete pavement. He sustained contusions on his head, back, right hip and leg, and an abrasion of the left leg. He suffered a brain concussion and a strain in the right sacroiliac region. In the spring of 1954 he began to show a slight tremor of his right hand which worsened gradually. His condition was diagnosed as Parkinson's disease. This condition was caused by the injury to his head sustained on July 11, 1953. The defendants claimed to have proved that there was no causal relation between this injury and the Parkinson's disease from which the plaintiff was suffering.

The decision in this appeal turns upon the overruling by the trial court of the defendants' objection to the plaintiff's reading of extracts from medical treatises in argument to the jury. For a better understanding of the situation presented by this ruling, we shall first consider certain rulings, assigned as error, concerning the use of the medical treatises in the course of the testimony.

The plaintiff offered Dr. Clifton W. Anderson as an expert medical witness. He testified over the defendants' objection that, in his opinion, a causal relation between the plaintiff's injuries and his con-

dition of Parkinson's disease was reasonably probable. The witness had previously stated that his opinion was based upon authorities which he had read and his own knowledge. The defendants' grounds of objection were, in substance, that the witness' testimony was based upon the opinion of the writers of medical treatises who were not subject to cross-examination and upon their statements, which were not in evidence. The court overruled the objection and an exception was taken. On cross-examination, the defendants offered a medical report made by the witness to the plaintiff on March 12, 1957, in which the doctor stated that he could find no causal relation between the accident and the plaintiff's disability. The report was duly received. On redirect, the witness was permitted, over objection by the defendants, to state in explanation that he had changed his opinion, as contained in his report of March 12, 1957, after he had seen the statements of two eminent neurologists, Dr. Derek E. Denny-Brown of Harvard Medical School and Dr. Israel S. Wechsler of Columbia University Medical School. Extracts from Cecil & Loeb, Textbook of Medicine (9th Ed.), page 1564, and Wechsler, Textbook of Clinical Neurology (7th Ed.), which contained the statements, respectively, were offered and marked as exhibits for identification. The court twice cautioned the jury that these extracts were offered in support of the witness' explanation and that their contents were not to be considered independently by the jury to prove a causal relation between the plaintiff's injury and his present condition. On recross-examination, the witness conceded that the medical textbooks had been shown to him only the day before by the plaintiff's counsel. The defendants then moved that the witness' testimony

be stricken. The motion was denied and the defendants duly excepted. In defense, the defendants called Dr. Edwin H. Mulford II, a qualified medical expert in the field of neurology. He testified that in his opinion there was no causal relation between the Parkinson's disease of the plaintiff and the injury sustained by him on July 11, 1953. On cross-examination, the plaintiff, after objection and exception taken by the defendants, read to Dr. Mulford the extracts from the medical treatises offered for identification and asked him whether he agreed with the authors. Dr. Mulford conceded that the authors were recognized authorities but stated that he disagreed with them. The plaintiff, during his argument to the jury, was permitted over objection by the defendants to read extracts from the medical texts. The record does not show that the defendants took exception to this ruling.

Upon the direct examination of an expert witness on medical science, extracts from treatises in that science which he states are recognized by his profession as authoritative and which have influenced or tend to confirm his opinion may be used. *Eagleston* v. *Rowley,* 172 F.2d 202, 203; 6 Wigmore, Evidence (3d Ed.) § 1700; see *Tompkins* v. *West,* 56 Conn. 478, 485, 16 A. 237; 3 Jones, Evidence (5th Ed.) § 622, n.9; *State* v. *Nicolosi,* 228 La. 65, 69, 81 So. 2d 711. In the cross-examination of the expert witness, such extracts may be used by incorporating them in questions to him to test his qualifications and to impeach his testimony. *State* v. *Wade,* 96 Conn. 238, 251, 113 A. 458; *Ruth* v. *Fenchel,* 21 N.J. 171, 176, 121 A.2d 373; 3 Jones, op. cit., p. 1186.

The extracts having been marked for identification, the crucial question is whether the plaintiff could read them in his argument to the jury. No

exception to the overruling of the objection to their use for this purpose was required. *Zalewski* v. *Waterbury Mfg. Co.,* 89 Conn. 46, 50, 92 A. 682. There is no transcript of the argument in the record, and we have no way of knowing precisely what was read. The trial court could have asked the plaintiff to reread the statement to which objection was made and could have directed the stenographer to record it. After their appeal had been filed, there being no transcript of the argument, the defendants, proceeding under Practice Book § 423 for a correction of the record, could have presented for incorporation in the record on appeal the matter objected to. Maltbie, Conn. App. Proc., § 283; see *Avery* v. *White,* 79 Conn. 705, 707, 66 A. 517. We shall assume that the material from the treatises which was read to the jury in argument was that used in the examination of the expert witnesses and marked as exhibits for identification.[1]

We have had occasion to consider the use of treatises in argument to the jury, but never under such circumstances as are present here. In *State* v. *Hoyt,* 46 Conn. 330, 337, a majority of a narrowly divided court said that for many years counsel had been permitted in capital cases to read in argument to the jury from treatises on insanity recognized as authoritative by the medical profession. We ap-

---

[1] Cecil & Loeb, Textbook of Medicine (9th Ed.) p. 1564: *"Etiology.* The specific cause is entirely unknown. Since the disease occurs in later life, there is commonly associated arteriosclerosis, but the characteristic disorder and pathology are independent of this. Arteriosclerosis may result in a similar but not identical clinical condition. Trauma may shortly precede the first symptoms. The onset is more commonly precipitated by an emotional crisis or physical exhaustion, and there is no reason to believe that the precipitant effect of trauma is other than through the effect of these factors in drawing attention to the previously unnoticed insidious onset. It is remarkable that focal vascular lesions, tumors and a variety of ex-

proved this practice in *State* v. *Wade,* supra, 250. The *Hoyt* case, supra, also indicated that counsel might read from opinions of this court dealing with insanity in capital cases. When that case was tried, the view prevailed that the statute concerning the functions of the court and the jury in criminal cases; Rev. 1875, p. 539, § 12; gave to the jury a wide latitude on issues of law. *State* v. *Buckley,* 40 Conn. 246, 248; *State* v. *Thomas,* 47 Conn. 546, 551; *State* v. *Main,* 69 Conn. 123, 127, 37 A. 80. This view no longer exists. Public Acts 1921, c. 267, § 1; Rev. 1958, § 54-89; *State* v. *Gannon,* 75 Conn. 206, 234, 52 A. 727. *Baldwin's Appeal,* 44 Conn. 37, 40, concerned counsel's request, upon an appeal from probate, to read in argument to the jury opinions in cases decided in other states and England, and we held that the trial court properly refused the request. In *Richmond's Appeal,* 59 Conn. 226, 243, 22 A. 82, counsel's request to read in argument from Redfield, Wills, was denied. We said (p. 244) that the ruling in *State* v. *Hoyt,* supra, was confined to cases where the defense of insanity is made in a criminal proceeding and that in all other cases the ruling in *Baldwin's Appeal,* supra, applied. We further said that the reading of books of science, art or purely technical knowledge shown to be

---

perimental lesions in animals fail to produce the characteristic syndrome, which must therefore require a selective type of damage to nervous structure."

Wechsler, Textbook of Clinical Neurology (7th Ed.) p. 572: "Generally, no direct etiologic factor can be found. The disease is more common in males than in females. Fright or other emotional upset, and even trauma, may precipitate or aggravate the illness. Heredity, though generally absent as a causative factor, was sometimes considered in the rare instances where the disease appeared through several generations of the same family. Finally, out of historical interest, one may recall the discarded notion of parathyroid etiology."

recognized by experts as standard authority and made a part of the testimony of the expert witnesses could be allowed in the discretion of the court under the reasoning in *Tompkins* v. *West,* 56 Conn. 478, 485, 16 A. 237. The *Tompkins* case involved the use of medical treatises in the direct examination of a medical expert and was not concerned with the reading of such treatises in argument to the jury. In *Cervino* v. *Coratti,* 131 Conn. 518, 41 A.2d 95, the alleged alteration of a promissory note was in issue. We said (p. 521) that the broad language in *State* v. *Wade,* supra, must be read in the light of, and could not go beyond the rule in, *Richmond's Appeal,* supra, and we sustained a ruling of the trial court denying counsel the right to read in argument to the jury textbooks on questioned documents. Whether *State* v. *Hoyt,* supra, and *Richmond's Appeal,* supra, are still good law we are not now called upon to decide, because they presented factual situations markedly different from that in the case at bar.

This case is a civil action for damages. The testimony of the medical experts was in sharp conflict. The medical treatises played a crucial role. The weight and credibility of the expert witnesses was a question for the jury to decide, and their resolution of these issues could well have turned upon whether the extracts from the treatises supported or impeached the testimony of the witnesses. The extracts had been offered and admitted as exhibits for identification only. If the plaintiff desired to read them in argument to the jury and so use them as full exhibits, he should have offered them as such. 88 C.J.S. 347, § 176. The trial court could then determine whether the extracts had come from sources shown to be recognized by the medical profession as authoritative, and whether they were relevant,

and the court could exercise its judicial discretion as to whether they were admissible. The court erred in permitting them to be read to the jury, over the defendants' objection, when they were marked as exhibits for identification only.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.